THE STATE EX REL. PLAIN DEALER PUBLISHING
COMPANY *v.* FLOYD, JUDGE, ET AL.

[Cite as *State ex rel. Plain Dealer Publishing Co.
v. Floyd,* 111 Ohio St.3d 56, 2006-Ohio-4437.]

(No. 2006–0945—Submitted August 8, 2006—Decided August 30, 2006.)

**Per Curiam.**

{¶ 1} This is an original action in which a newspaper publisher requests writs of prohibition and mandamus related to juvenile court closure orders. We grant the writ of prohibition to prevent the juvenile court judge from closing proceedings without conducting an evidentiary hearing and without making the required findings. We also grant all but one of the requested writs of mandamus.

Cuyahoga County Juvenile Court: General Practices Concerning Closure

{¶ 2} The clerk of respondent Cuyahoga County Court of Common Pleas, Juvenile Division does not normally allow the general public or the press to inspect any portion of the docket of any juvenile court matter. In addition, the clerk does not generally permit public or press inspection of judicial rulings, motions, transcripts, or any other paper filed with the clerk. There is also no publicly accessible docket that notifies the general public and the press of any motion to exclude the public and the press from the courtroom, hearings scheduled on these closure motions, or judges' rulings on the motions.

{¶ 3} The press thus has only limited ways to learn about the existence of and content of motions, hearings, and court orders to close the juvenile courtroom: from attorneys involved in the cases who are willing to talk with reporters or from court officers, such as the court's media specialist. The juvenile court's media specialist provides the press with information requested by reporters only

after obtaining approval from the court's in-house attorney, the administrative judge, and the judge assigned to the particular case involved. The media specialist has advised reporters to request information about cases before respondent Judge Alison Floyd of the juvenile court directly from Judge Floyd's office.

## Juvenile Court Proceedings Involving the Goonies

{¶ 4} In October 2005, charges were filed against 14 teenage boys who were alleged to have committed various crimes and acts of delinquency as members of a gang known as the Goonies. The Goonies allegedly committed these crimes, including aggravated robbery, arson, felonious assault, burglary, and criminal gang activity, against people living in a section of Cleveland, Ohio, known as Slavic Village. The crimes were committed from June 2005 through October 2005. Judge Floyd presides over all of these cases in the Cuyahoga County Juvenile Court.

{¶ 5} In November 2005, four of the boys—Michael Woody, age 16; Ronnie Tramble, age 16; Matthew Dupree, age 15; and Verlondo Harper, age 15—were charged with the aggravated murder and murder of 76–year–old Therese Szelugowski, who had been killed near a bus stop in the middle of the day. One of the four boys had allegedly knocked Szelugowski down on October 5, 2005, when he stole her purse. Szelugowski hit her head on the pavement, lost consciousness, and died, without having regained consciousness, three weeks later, on October 26, 2005.

{¶ 6} Relator, the Plain Dealer Publishing Company ("Plain Dealer"), publishes *The Plain Dealer,* a daily newspaper. The Plain Dealer has published articles about the Goonies, but has not published the names of juveniles, except for the four teenagers charged with the murder of Szelugowski.

{¶ 7} On November 4, 2005, after the juveniles retained or were appointed counsel, several of them filed motions to close their juvenile court proceedings to the public, and later that month, the Plain Dealer entered an appearance in the cases. On January 13, 2006, Judge Floyd scheduled closure hearings in the juveniles' cases. The juvenile court notified the parties, their attorneys, and the Plain Dealer of the scheduled hearings. On January 19, the Plain Dealer informed Judge Floyd that it would oppose the motions for closure in the Woody, Harper, and Dupree cases, but that it would not oppose the motions for closure in the other cases in which the juveniles moved to close their proceedings, including a case involving alleged Goonies member Darelle Burton.

{¶ 8} For the juveniles whose motions to close the proceedings were not opposed, Judge Floyd claims that she conducted hearings and granted the motions only after determining that (1) there existed a reasonable and substantial basis for believing that public access could harm the child or endanger the

fairness of the adjudication, (2) the potential for harm outweighed the benefits of public access, and (3) there were no reasonable alternatives to closure. Judge Floyd filed an affidavit stating the foregoing as part of her submission of evidence in this case.

{¶ 9} The juvenile court dockets for the cases, however, suggest otherwise. For example, in several of the cases, Judge Floyd noted in entries that she was granting the juveniles' motions for closure because the media opposition had been withdrawn and "[w]ith the absence of evidence to the contrary, the motion should be granted."

{¶ 10} For those juveniles whose motions to close proceedings were contested by the media, i.e., Woody, Harper, and Dupree, Judge Floyd claims in her affidavit that she held hearings and denied the motions. But the dockets for those cases show that Judge Floyd granted Woody's motion to close a competency hearing, Harper withdrew his motion for closure, and Judge Floyd denied Dupree's motion to close future proceedings when his attorney did not show up for the hearing. In the cases that were not closed to the public and in which the media had requested to be present, Judge Floyd informed victims and witnesses of their right to object to being filmed, videotaped, recorded, or photographed, in accordance with Sup.R. 12 and Loc.R. 4 of the Court of Common Pleas of Cuyahoga County, Juvenile Division ("Loc.Juv.R. 4"). If a victim or witness objected, Judge Floyd informed members of the media that they could not film, videotape, record, or photograph that person.

{¶ 11} In February 2006, Tramble agreed to plead guilty to involuntary manslaughter for his role in Szelugowski's death and further agreed to testify against other alleged gang members. Tramble then testified that Woody had stolen Szelugowski's purse and that Tramble, Harper, and Dupree had planned various crimes.

{¶ 12} Judge Floyd ordered Woody moved from the juvenile-detention facility to a county jail, ruled that whether Harper would be tried as an adult in the Szelugowski death depended on the outcome of future hearings, and determined that Dupree should not be tried as an adult in the death of Szelugowski. The issue of whether Dupree would be tried as an adult for allegedly committing armed robbery of patrons at a local bar remained pending.

{¶ 13} On the morning of May 2, 2006, Plain Dealer reporter Matthew Gabriel Baird attempted to attend a hearing in the delinquency case of Darelle Burton, but Judge Floyd informed Baird that he could not attend the hearing because she had previously granted Burton's motion to close the proceedings. The juvenile court docket for Burton's case, which was submitted as evidence by respondents on June 8, 2006, notes that his motion to close the proceedings was filed in November 2005, but the docket does not indicate any ruling by Judge Floyd on

the motion. On July 10, 2006, respondents filed a notice in this court advising that an entry granting the motion had been prepared by Judge Floyd in February 2006, but was not journalized until June 29, 2006. In that entry, Judge Floyd granted Burton's motion to close proceedings because "any opposition to the child's motion has been sufficiently withdrawn and/or no defense to the motion shall be given in open court, such that the motion is found to be without opposition."

{¶ 14} On the afternoon of May 2, 2006, Baird attended an amenability hearing in Dupree's juvenile delinquency case to determine if Dupree should be tried as an adult for aggravated robbery with criminal-gang specifications, burglary, and theft. Baird was present during the presentation of the state's case, but Judge Floyd did not permit Baird to attend that portion of the amenability hearing at which evidence related to Dupree's confidential social history and physical or mental examination pursuant to Juv.R. 32 and Loc.Juv.R. 23 was presented. Judge Floyd noted that because counsel had previously entered an appearance on behalf of the Plain Dealer, she would delay the hearing for 30 minutes so that the Plain Dealer's attorney could be heard on whether the hearing should be closed. When counsel did not appear within the half hour, Judge Floyd proceeded with the closed hearing.

{¶ 15} Immediately after concluding the portion of the hearing concerning Dupree's confidential social history and physical or mental examination, Dupree called one of his parents to testify. According to Judge Floyd, she "did not adjourn the court proceedings at that time just to invite the public back into the courtroom." Consequently, Judge Floyd closed that portion of Dupree's amenability hearing without first conducting a closure hearing and making findings that the hearing warranted closure.

{¶ 16} On May 12, 2006, Judge Floyd conducted an amenability hearing in Harper's juvenile-delinquency case. Baird attended the hearing, but was not permitted to attend that portion of the hearing concerning Harper's confidential social history and physical or mental examination under Juv.R. 32 and Loc.Juv.R. 23.

April 27, 2006 Juvenile Court Proceedings Involving Elementary–School Fire

{¶ 17} Judge Floyd also presides over juvenile-delinquency cases involving two 11–year–old girls who are accused of setting a fire that caused over $200,000 in damage to St. John Nepomucene Elementary School. On March 22, 2006, charges were filed alleging that the juveniles had each committed two counts of aggravated arson, one count of arson, one count of inducing panic, and one count of possessing criminal tools. Judge Floyd set the cases for an arraignment to be held on April 27, 2006. On April 26, 2006, WOIO Channel 19, a Cleveland

television station, faxed a written request to the juvenile court's media liaison to attend the April 27 arraignment.

{¶ 18} On April 27, 2006, one of the juveniles moved to close the proceedings. The parents of the other juvenile, who had not yet been appointed an attorney, also objected to the media's presence. According to Judge Floyd, she delayed the arraignment for 30 minutes for the media that was present to secure the presence of counsel. Judge Floyd ultimately conducted the arraignment outside the presence of the media and without previously holding a closure hearing and making findings to support closure. Judge Floyd appointed counsel for the unrepresented juvenile, and the attorney subsequently filed a motion to close proceedings.

### Plain Dealer Request for Transcripts

{¶ 19} On May 11, 2006, the Plain Dealer requested that Judge Floyd provide it with copies of transcripts of the April 27, 2006 arraignment of the two juveniles accused of causing the elementary-school fire and the portion of the May 2, 2006 amenability hearing for Matthew Dupree containing Dupree's parent's testimony. Judge Floyd has not provided these transcripts or informed the Plain Dealer whether they will be provided.

### Prohibition and Mandamus Case

{¶ 20} On May 12, 2006, the Plain Dealer filed this action for a writ of prohibition barring Judge Floyd "from enforcing any order to close the courtroom in a delinquency matter based upon the absence of an appearance of counsel to argue against closure and where [Judge Floyd's] decision to close the courtroom was not preceded by a disinterested and independent judicial determination of the existence of sufficient evidence adduced at a closure hearing to require exclusion of the press and public in accordance with the standards established by this Court."

{¶ 21} The Plain Dealer also requests a writ of mandamus compelling Judge Floyd and the juvenile court either "to make available for inspection and copying the transcripts" of the April 27, 2006 arraignment of the two girls accused of setting fire to the elementary school and the portion of the May 2, 2006 amenability hearing in which Dupree's parent testified or "to conduct an evidentiary hearing to determine whether sufficient evidence exists to deny * * * the press and public generally * * * access to the transcripts."

{¶ 22} Finally, the Plain Dealer seeks a writ of mandamus compelling the juvenile court "to make available for public inspection docket entries or similar court records to the extent sufficient to afford notice to relator (and the press and public generally)" of motions to close the courtroom, dates and times of closure hearings, and judicial orders deciding whether to close the courtroom.

{¶ 23} On May 19, 2006, we granted an alternative writ and issued a schedule for the presentation of evidence and briefs. *State ex rel. Plain Dealer Publishing Co. v. Floyd*, 109 Ohio St.3d 1474, 2006-Ohio-2453, 847 N.E.2d 1221. The parties submitted evidence and briefs pursuant to the court's schedule. The Plain Dealer filed motions to strike (1) portions of Judge Floyd's affidavit submitted as evidence in this case, (2) the closure order submitted by Judge Floyd and the juvenile court on July 10, 2006, advising this court of the trial court's recent activity in the Burton case, and (3) unsworn statements of facts in respondents' merit brief and memorandum in opposition to the Plain Dealer's motion to strike portions of Judge Floyd's affidavit.

{¶ 24} This cause is now before the court for a consideration of the merits.

### Prohibition: Court Closure

{¶ 25} The Plain Dealer seeks a writ of prohibition to prevent Judge Floyd from closing any juvenile-delinquency proceeding based upon the nonappearance of counsel to argue against closure rather than holding a hearing at which sufficient evidence is adduced that justifies closure.

{¶ 26} "There is a long line of cases holding that an action for a writ of prohibition is the proper vehicle to challenge an order of a trial court which orders closure of court proceedings." *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas, Juvenile Div.* (1996), 77 Ohio St.3d 40, 43, 671 N.E.2d 5. In fact, "[i]nterlocutory orders of a trial court restricting public access to pending litigation are not final, appealable orders, and may be challenged during the pendency of the litigation only through an action for a writ of prohibition. Members of the press and public who seek access to a closed court proceeding have standing to seek a writ of prohibition for this purpose." *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph one of the syllabus; *State ex rel. Dayton Newspapers, Inc. v. Phillips* (1976), 46 Ohio St.2d 457, 75 O.O.2d 511, 351 N.E.2d 127, paragraph one of the syllabus ("A writ of prohibition provides an appropriate remedy to prevent the enforcement by a trial court of an order improperly excluding the public and members of the press from pretrial hearings"); see, also, id. at paragraph two of the syllabus.

{¶ 27} In the absence of a qualified constitutional right of access to juvenile delinquency proceedings, these proceedings "are neither presumed open nor presumed closed." *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.* (2000), 90 Ohio St.3d 79, 83–85, 734 N.E.2d 1214. "Therefore, under the applicable standard, a juvenile court may restrict public access to delinquency proceedings if, *after hearing evidence and argument on the issue*, the court finds that (1) there exists a reasonable and substantial basis for believing that public access could harm the child or endanger the fairness of the adjudication, (2) the potential for harm outweighs the benefits

of public access, and (3) there are no reasonable alternatives to closure." (Emphasis added.) Id. at 85, 734 N.E.2d 1214, citing *T.R.*, 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph three of the syllabus, and *State ex rel. Dispatch Printing Co. v. Lias* (1994), 68 Ohio St.3d 497, 628 N.E.2d 1368, paragraph one of the syllabus. The burden of establishing these factors is on the party seeking closure of the delinquency proceeding. *Plain Dealer*, 90 Ohio St.3d at 85, 734 N.E.2d 1214.

{¶ 28} Notwithstanding Judge Floyd's affidavit to the contrary, the entries she submitted as part of her evidence in this case establish a pattern in which she granted motions to close delinquency proceedings without hearing any evidence or making any findings, simply because media opposition had been withdrawn. See *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 30, quoting *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St.3d 366, 2003-Ohio-6608, 800 N.E.2d 361, ¶ 20 ("It is axiomatic that '[a] court of record speaks only through its journal entries' ").

{¶ 29} Judge Floyd is correct that no statute or rule requires her to specify her reasons for closing juvenile court proceedings in her entries granting closure motions. Cf., e.g., *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 52. But, cf., *In re Washington Post Co.* (C.A.4, 1986), 807 F.2d 383, 390–391 (if a court decides to close a hearing in a criminal case, it must state its reasons on the record). But a review of her entries establishes that her reason for granting the motions was that the closure motions were unopposed. No additional evidence is essential to discern the rationale employed by Judge Floyd. Cf. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172, paragraph one of the syllabus ("Where, in the interest of justice, it is essential for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, the reviewing court must examine the entire journal entry and the proceedings"). Moreover, Judge Floyd's actions in the Dupree and elementary-school-fire cases establish that she has engaged in a practice of closing proceedings without conducting closure hearings and making the requisite findings. Therefore, Judge Floyd's affidavit is contradicted by both her journal entries and her admitted actions in certain juvenile court proceedings.

{¶ 30} In addition, Judge Floyd concedes in her affidavit that she closed a portion of the May 2, 2006 amenability hearing in the Dupree case because she did not want to adjourn the proceedings after hearing a confidential portion of the case simply to afford access to the public to a nonconfidential portion.

{¶ 31} Finally, at the April 27, 2006 hearing for the two girls accused of setting the elementary-school fire, Judge Floyd conducted the arraignment outside the presence of the general public and the press after giving the media 30 minutes to

secure counsel to object to the closure motion made that same day by one of the juveniles.

{¶ 32} In all of these instances, Judge Floyd did not conduct an evidentiary hearing or make the findings required by precedent to justify closing the proceedings. *Plain Dealer,* 90 Ohio St.3d at 85, 734 N.E.2d 1214; see, also, *State ex rel. Dispatch Printing Co. v. Louden* (2001), 91 Ohio St.3d 61, 65, 741 N.E.2d 517. Because the party moving for closure bears the burden of proof, *Plain Dealer,* 90 Ohio St.3d at 85, 734 N.E.2d 1214, the mere lack of opposition to the motion is not sufficient to warrant closure. Therefore, Judge Floyd's closure of these proceedings was unjustified. See *Plain Dealer,* 90 Ohio St.3d at 86–87, 734 N.E.2d 1214 (juvenile court judge abused his discretion in closing delinquency proceeding when the movant did not introduce any evidence in support of closure); *Louden,* 91 Ohio St.3d at 65, 741 N.E.2d 517, quoting *Plain Dealer,* 90 Ohio St.3d at 87, 734 N.E.2d 1214 ("Judge Louden did not hear evidence and argument on the issue of closing the detention hearing and did not make the requisite findings before adjudicating the issue in an informal, off-the-record procedure. * * * In the absence of the foregoing, Judge Louden's closure of the detention hearing was unjustified and constituted 'little more than [his] personal predilections' ").

{¶ 33} Following *Plain Dealer,* 90 Ohio St.3d 79, 734 N.E.2d 1214, and *Louden,* 91 Ohio St.3d 61, 741 N.E.2d 517, the General Assembly amended R.C. 2151.35(A)(1), which had previously provided that in any case in the juvenile court, "the general public may be excluded," to require a separate closure hearing: "The court may exclude the general public from its hearings in a particular case *if the court holds a separate hearing to determine whether that exclusion is appropriate.*" (Emphasis added.) Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9515; see, also, Juv.R. 27, which was also amended to permit persons to demonstrate at a closure hearing "a countervailing right to be present" at a juvenile court proceeding.

{¶ 34} The closure hearing and evidentiary findings required by precedent, statute, and rule are not removed simply because there is no opposition to a motion for closure. As cogently observed by the Plain Dealer, Judge Floyd's granting closure because there was no opposition, when combined with the juvenile court's general failure to give notice concerning closure motions and hearings on those motions, effectively precluded the general public from most juvenile court proceedings, resulting in an unfounded presumption of closed juvenile proceedings.

{¶ 35} This result fails to accord sufficient weight to the "many legitimate interests [that] favor public access to [juvenile delinquency] proceedings." *Plain Dealer,* 90 Ohio St.3d at 84, 734 N.E.2d 1214. These interests include educating society about the juvenile court, promoting public confidence in the judicial

branch, deterring future acts of delinquency, deterring abuse of power by judges and other public officials, and alerting parents to their responsibilities regarding their minor children. Id. Even the National Council of Juvenile and Family Court Judges has acknowledged that traditional notions of confidentiality should be relaxed in juvenile proceedings because the juvenile court " 'should be open to the media, interested professionals, and students and, when appropriate, the public, in order to hold itself accountable, educate others, and encourage greater community participation.' " Dienes, Levine & Lind, Newsgathering and the Law (2 Ed.1999) 139, fn. 443, quoting National Council of Juvenile & Family Court Judges, Children and Family First: A Mandate for America's Courts (1995) 3.

{¶ 36} Therefore, we hold that Judge Floyd abused her discretion by conducting closed delinquency proceedings without first holding the required evidentiary closure hearing and making the requisite findings to support closure. Consequently, we grant the requested writ of prohibition.

Mandamus to Compel Access to Transcripts of Improperly Closed Proceedings

{¶ 37} The Plain Dealer requests a writ of mandamus to compel Judge Floyd and the juvenile court to provide access to transcripts of the April 27, 2006 arraignment hearing in the school-fire case, the portion of the May 2, 2006 amenability hearing in the Dupree case, in which one of his parents testified, and the May 2, 2006 hearing in the case involving Darelle Burton.

{¶ 38} Regarding the first two matters—the arraignment in the school-fire case and the parent's testimony in the Matthew Dupree case—the juvenile court improperly closed those proceedings without first conducting the requisite evidentiary hearing and making the required findings. The Plain Dealer claims that it is entitled to a writ of mandamus to compel access to copies of the transcripts of these proceedings. See, e.g., *Louden*, 91 Ohio St.3d at 66, 741 N.E.2d 517; see, also, *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juvenile Div.* (1995), 73 Ohio St.3d 19, 22, 652 N.E.2d 179, holding that Juv.R. 37(B), which provides that "[n]o public use shall be made by any person * * * of any juvenile court record, including the recording or a transcript of any juvenile court hearing, except in the course of an appeal or as authorized by order of the court or by statute," did not preclude a writ of mandamus to compel access to a transcript of a juvenile court proceeding.

{¶ 39} In both of these cases, however, there was no evidence of any motion by the parties in the underlying juvenile court cases to close the proceeding. *Louden*, 91 Ohio St.3d at 62–63, 741 N.E.2d 517 ("Neither of the parties to the case, DiGian or the state of Ohio, nor their counsel had requested closure of the proceeding"); *Scripps Howard*, 73 Ohio St.3d at 19, 652 N.E.2d 179 ("during an open court proceeding in the case," a juvenile court judge found an attorney and her client in contempt).

{¶ 40} We therefore hold that when a party requests that the juvenile court proceeding be closed, but the court fails to hold an appropriate evidentiary hearing and make the required findings before closing the proceeding, a person or entity successfully challenging that practice is not automatically entitled to release of the transcript of the improperly closed proceeding. Instead, under these circumstances, the person or entity challenging the improper closure is entitled to a writ of mandamus to compel the juvenile court judge to conduct the closure hearing that should have been held in order to determine if release of the transcript is warranted. If the judge decides that the proceeding should not have been closed, the transcript should be released. This procedure protects the important interests of the juveniles requesting closure, who are often—as is true of this case—not parties to the writ action challenging the improper closure, without diminishing the ability of the public, including the media, to argue against closure.

{¶ 41} Applying these principles to the requested transcripts, because Judge Floyd improperly closed the April 27, 2006 arraignment hearing in the school-fire case and the juveniles involved in that case have filed motions to close the proceeding, the Plain Dealer is entitled to a writ of mandamus to compel Judge Floyd to conduct a closure hearing on the issue of whether the arraignment-hearing transcript should be released to the Plain Dealer, with notice of the hearing given to the parties and the Plain Dealer and to the public by entering the date of the scheduled hearing on a publicly available docket in the case.

{¶ 42} For the portion of the May 2, 2006 amenability hearing in the Dupree case at which one of Dupree's parents testified, however, Judge Floyd had already denied Dupree's motion to close proceedings in the case because Dupree's attorney had failed to appear for a closure hearing. Therefore, pursuant to *Louden* and *Scripps Howard*, the Plain Dealer is entitled to a writ of mandamus to compel the Cuyahoga County Court of Common Pleas, Juvenile Division, to allow the Plain Dealer access to the transcript of the nonconfidential portion of the Dupree amenability hearing.

{¶ 43} Further, with respect to the Plain Dealer's request for a writ of mandamus to compel access to a copy of the transcript of the May 2, 2006 hearing in the Burton case, the Plain Dealer never requested access to the transcript of this proceeding in its complaint and did not seek to amend its complaint to include this claim. We granted an alternative writ based on the relief requested by the Plain Dealer in its complaint, and the parties presented evidence without notice that the claim was being raised. In addition, there is no evidence that the Plain Dealer has ever requested that the juvenile court provide it with a copy of the transcript of the May 2, 2006 Burton proceeding. Under these circumstances, we need not address the merits of this improperly raised claim. See,

e.g., *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 64; *State ex rel. Massie v. Gahanna–Jefferson Pub. Schools Bd. of Edn.* (1996), 76 Ohio St.3d 584, 589, 669 N.E.2d 839; see, also, *State ex rel. Hammons v. Chisholm*, 99 Ohio St.3d 405, 2003-Ohio-4125, 792 N.E.2d 1120, ¶ 15 (Public Records Act requires prior request as a prerequisite for a mandamus action).

### Mandamus to Compel Notification of Motions to Close Juvenile Court Proceedings, Scheduled Hearings of the Motions, and Court Rulings on the Motions

{¶ 44} The Plain Dealer claims entitlement to a writ of mandamus to compel the Cuyahoga County Court of Common Pleas, Juvenile Division, to make publicly available docket information regarding motions to close juvenile proceedings, scheduled hearings on the motions, and court rulings on the motions. The Plain Dealer cites the constitutional right of due process in support of its claim.

{¶ 45} The right to procedural due process is required by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6. "[A]t its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right. *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113. Further, the opportunity to be heard must occur at a meaningful time and in a meaningful manner." *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8.

{¶ 46} We have held that the press and the general public have standing to contest the closure of a juvenile court proceeding. See, e.g., *T.R.*, 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph one of the syllabus; *Lias*, 68 Ohio St.3d at 502, 628 N.E.2d 1368 ("the public [including the press] has a need and right to have open courts"). In 2002, the General Assembly codified the requirement that a juvenile court conduct a separate hearing to determine the propriety of excluding the public from any proceeding. R.C. 2151.35(A)(1). Similarly, under the current version of Juv.R. 27(A)(1), persons—including the public and the press—have a right to present evidence at a closure hearing to show a "countervailing right to be present" at a juvenile court proceeding.

{¶ 47} The foregoing right to be heard at an evidentiary hearing is rendered meaningless when—as here—the juvenile court does not allow public access to its docket to provide notice of filed motions for closure, scheduled hearing dates for those motions, and the court's rulings on them. The public availability of juvenile court dockets varies significantly from county to county, with some counties, such as Lucas County, routinely permitting public inspection and other counties, such

as Franklin County, prohibiting public inspection. Under the Cuyahoga County Juvenile Court's practice of routinely denying access to its docket and filings "even the most vigilant of reporters could not have known that the right of access was in jeopardy in time to be heard on the question of closure." *United States v. Raffoul* (C.A.3, 1987), 826 F.2d 218, 225. "The press should not be expected to 'camp out' in the hallway in order to ascertain whether evidentiary proceedings are being conducted in chambers." *United States v. Criden* (C.A.3, 1982), 675 F.2d 550, 559. Instead, "representatives of the press and general public 'must be given the opportunity to be heard on the question of exclusion.'" *Globe Newspaper Co. v. Superior Court for Norfolk Cty.* (1982), 457 U.S. 596, 609, 102 S.Ct. 2613, 73 L.Ed.2d 248, fn. 25, quoting *Gannett Co., Inc. v. DePasquale* (1979), 443 U.S. 368, 401, 99 S.Ct. 2898, 61 L.Ed.2d 608 (Powell, J., concurring).

{¶ 48} In determining the scope of this notice, the California Supreme Court examined the pertinent precedent and held, "When a motion seeking closure is made in a written filing, adequate notice is provided by publicly docketing the motion reasonably in advance of a determination thereon." *NBC Subsidiary, Inc. v. Superior Court* (1999), 20 Cal.4th 1178, 1217, 86 Cal.Rptr.2d 778, 980 P.2d 337; cf. *In re Knoxville News–Sentinel Co., Inc.* (C.A.6, 1983), 723 F.2d 470, 475 ("In order to protect this right to be heard, the most reasonable approach would be to require that motions to seal be docketed with the clerk of the district court"). Individual notice is generally not required. *Ex parte Hearst–Argyle Television, Inc.* (2006), 369 S.C. 69, 79, 631 S.E.2d 86, citing *In re Knight Publishing Co.* (C.A.4, 1984), 743 F.2d 231, 235. Moreover, the court must provide interested persons with an opportunity to object before the court makes its decision, and if the court decides to close a hearing, it must state its reasons on the record, supported by specific findings. *Washington Post*, 807 F.2d at 390–391; *Raffoul*, 826 F.2d at 226.

{¶ 49} The public and press are afforded a meaningful opportunity to be heard on a motion for closure in juvenile court when (1) a written motion for closure is entered on a publicly available docket and the motion itself is available for public inspection, (2) the scheduled hearing on the motion is also entered on a publicly available docket, and (3) any court decision is entered on a publicly available docket and the decision is available for public inspection.

{¶ 50} To be sure, unlike the dockets in civil and criminal cases, the dockets in juvenile cases are protected by Juv.R. 37(B), which provides, "No public use shall be made by any person, including a party, of any juvenile court record * * *, except in the course of an appeal or as authorized by order of the court or by statute." But this rule must yield when it impinges on the public's due process right to a meaningful closure hearing. Cf., e.g., *Scripps Howard*, 73 Ohio St.3d at 21–22, 652 N.E.2d 179; *State ex rel. Cincinnati Post v. Court of Appeals*,

*Second Appellate Dist.* (1992), 65 Ohio St.3d 378, 381–382, 604 N.E.2d 153 (newspaper entitled to writ of mandamus to compel access to results of cases decided under judicial-bypass section of abortion statute's parental-notification requirement, as long as disclosure does not compromise the anonymity of the minor).

{¶ 51} "The purpose of Juv.R. 37(B) is to keep confidential juvenile court records involving children, since their welfare is at stake." *Scripps Howard*, 73 Ohio St.3d at 22, 652 N.E.2d 179. This purpose, however, is not adversely affected by the public disclosures required by constitutional due process to afford the press and public a meaningful opportunity to be heard in closure hearings, because the court can and should redact any confidential information. This result secures the right of the press and the public to be heard on the issue of closure without compromising the vital confidentiality interests in place to protect the children involved in these proceedings.

{¶ 52} Therefore, we grant a writ of mandamus to compel the juvenile court to enter on a publicly available docket motions for closure, notices of scheduled hearings on the motions, and court decisions on the motions, and to provide access to those motions, notices, and decisions, subject to redaction of confidential information.

## Conclusion

{¶ 53} Based on the foregoing, we grant the requested extraordinary relief in prohibition to prevent Judge Floyd from closing juvenile court proceedings without conducting an evidentiary hearing and without making the required findings. We grant a writ of mandamus to compel Judge Floyd and the juvenile court to provide a transcript of the portion of the May 2, 2006 Dupree amenability hearing at which one of his parents testified. We also grant a writ of mandamus to compel Judge Floyd and the juvenile court to conduct a closure hearing on the issue of whether a transcript of the April 27, 2006 arraignment hearing in the school-fire case should be released to the Plain Dealer, with notice of the closure hearing to be given to the parties, the Plain Dealer, and the public. In addition, we grant a writ of mandamus to compel the juvenile court to enter notice on a publicly available docket when motions to close are filed, when hearings on the motions will be held, and court rulings on the motions, and to permit public access to these filings and rulings after confidential information has been redacted. We deny the request for a writ of mandamus to compel the court to provide the transcript of the May 2, 2006 proceeding in the Burton delinquency case. Our holding renders the Plain Dealer's motions to strike moot.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZING-ER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

### PFEIFER, J., concurring in judgment only.

{¶ 54} I concur in the holdings of the court in this case, which balance well the competing, legitimate interests of openness and privacy in juvenile court proceedings. However, some of the language in the opinion could be applied in future cases to discount the value of privacy in certain proceedings. The opinion's emphasis on the " 'many legitimate interests [that] favor public access to [juvenile delinquency] proceedings,' " majority opinion at ¶ 35, quoting *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.* (2000), 90 Ohio St.3d 79, 84, 734 N.E.2d 1214, and seeming approval of the statement that "traditional notions of confidentiality should be relaxed in juvenile proceedings," majority opinion at ¶ 35, go much too far in shifting the balance in juvenile court proceedings away from privacy and toward complete openness.

{¶ 55} Courts should be cognizant of the strong policy reasons for keeping certain juvenile proceedings closed. The wrongs that children do that bring them before the juvenile court bench run the gamut from toilet-papering to murder. Juveniles that commit minor wrongs (and their parents) should not be faced with having to satisfy a nearly impossible-to-meet standard to keep a hearing closed and personal. The test for determining whether a juvenile proceeding should be open has in effect become "Is the newspaper interested in covering it?" Juvenile court judges should have more leeway in determining whether to close a proceeding based on how an open proceeding could affect the ultimate rehabilitation of the child.

---

Baker & Hostetler, L.L.P., and David L. Marburger, for relator.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for respondents.