OPINION
{¶ 1} Defendant-appellant, Speedway Superamerica, LLC, appeals the decision of the Butler County Court of Common Pleas, denying its motion for summary judgment, and granting the summary judgment motion of plaintiff-appellee, West Chester Township Board of Township Trustees. We affirm the trial court's decision.
 {¶ 2} On June 11, 2004, Mary Ann Santel, the West Chester Township Senior Code *Page 2 
Enforcement Officer, sent a notice to the tax mailing address listed on the Butler County Auditor's website for appellant's 8370 Cincinnati-Dayton Road store location, indicating that the store was in violation of several provisions of the West Chester Township Zoning Resolution ("Zoning Resolution"). Specifically, the notice indicated that appellant was in violation of provisions of the Zoning Resolution prohibiting the outdoor storage, display, and sale of merchandise, and for using temporary advertising signs without a permit. Santel also sent a copy of the violation notice to the manager of that store, Rhonda Viltrakis, who then gave the notice to her district manager, Timothy Young. On June 24, 2004, Santel sent a final violation notice to the tax mailing address, after re-inspecting the store and discovering that appellant was still in violation of the Zoning Resolution.
 {¶ 3} In August 2004, appellant's representatives met with the West Chester Township Department of Planning and Zoning, where they discussed the zoning violations at the Cincinnati-Dayton Road store, which is zoned B-2, Business District, and similar violations at appellant's stores located at: 9850 Cincinnati-Columbus Road, zoned B-1, Business District; 9738 Princeton-Glendale Road, zoned M-2, General Industrial District; and 7397 Tylersville Road, zoned B-2, Business District. Appellant's representatives indicated at this meeting that appellant did not intend to comply with the applicable provisions of the Zoning Resolution.
 {¶ 4} On November 1, 2004, appellee filed four complaints against appellant, alleging that four of appellant's stores are in violation of various provisions of the Zoning Resolution. Appellee sought declaratory judgment that appellant was in violation of the Zoning Resolution, and preliminary and permanent injunctions against appellant, enjoining it from continuing to use and maintain its stores in violation of the Zoning Resolution. The parties filed a joint motion for consolidation of the four cases, and the trial court granted the motion. The parties each filed motions for summary judgment, and on April 11, 2006, the trial court *Page 3 
granted appellee's motion for summary judgment, and denied appellant's motion for summary judgment. Appellant appeals the trial court's decision, raising seven assignments of error. For ease of discussion, we discuss these assignments of error out of order.
 {¶ 5} In its third assignment of error, appellant argues that the trial court erred in finding that appellant violated the Zoning Resolution, because it engaged in a permitted accessory use of its property. Appellant maintains the trial court applied the wrong standard of review and failed to properly interpret the Zoning Resolution. We disagree.
 {¶ 6} This court conducts a de novo review of a trial court's decision on summary judgment. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. A court may grant summary judgment to the moving party only if that party demonstrates: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Welco Industries, Inc. v. AppliedCos., 67 Ohio St.3d 344, 346, 1993-Ohio-191.
 {¶ 7} According to the record, the trial court did mischaracterize the matter below as an appeal of the decision of the board of zoning appeals and cited R.C. 2506.04, which governs administrative appeals. While the trial court erred in this regard, we find the error to be harmless, as the court cited the proper summary judgment standard, and conducted a thorough analysis pursuant to that standard. Moreover, this error is inconsequential, as this court reviews the trial court's decision de novo.
 {¶ 8} Zoning Resolution 20.04 and 20.041 apply to all districts zoned as "Business" districts, including B-1 and B-2, and provide:
 {¶ 9} "20.04 * * * Unless specifically permitted by the District in which it is located, all uses must comply with the following requirements." *Page 4 
 {¶ 10} "20.041 * * * All business, service or processing shall be conducted within a completely enclosed building, except for off-street automobile parking, off-street loading, and specifically permitted uses." (Emphasis added.)
 {¶ 11} Zoning Resolution 21.02 and 21.021, which apply to businesses located in B-1 zoned districts, provide:
 {¶ 12} "21.02 * * * The following are principal uses permitted as of right, provided that a Zoning Certificate and Final Inspection Certificate have been issued pursuant to Article 5, Subsection 5.06."
 {¶ 13} "21.021 * * * Convenience businesses which cater to the adjacent residential neighborhood; provided that all such operations including storage, display and sales, be conducted completely within anenclosed building." (Emphasis added.)
 {¶ 14} In addition, Zoning Resolution 22.02 and 22.021, which apply to businesses located in B-2 zoned districts, provide:
 {¶ 15} "22.02 * * * The following uses are principal uses permitted as of right, provided that a Zoning Certificate and Final Inspection Certificate have been issued pursuant to Article 5, Subsection 5.06."
 {¶ 16} "22.021 * * * Any principal permitted use in the B-1 District."
 {¶ 17} Also, Zoning Resolution 24.02 and 24.022, which apply to businesses located in M-1 "Light Industrial" zoned districts, provide:
 {¶ 18} "24.02 * * * The following uses are principal uses permitted as of right, provided that a Zoning Certificate and Final Inspection Certificate have been issued pursuant to Article 5, Subsection 5.06.
 {¶ 19} "24.022 * * * Any use permitted and as regulated, including development standards by the B-1 or B-2 Districts * * *."
 {¶ 20} Zoning Resolution 25.02 and 25.021, which apply to businesses located in M-2 *Page 5 
"General Industrial" zoned districts, provide:
 {¶ 21} "25.02 * * * The following uses are principal uses permitted as of right, provided that a Zoning Certificate and Final Inspection Certificate have been issued pursuant to Article 5, Subsection 5.06."
 {¶ 22} "25.021 * * * Any use permitted and as regulated, including development standards by the principal permitted use as regulated in the M-1 Light Industrial District."
 {¶ 23} Further, Zoning Resolution 10.282 provides that, "[a] Zoning Certificate shall be obtained from the West Chester Department of Planning and Zoning before any sign (except any sign exempted from this article) is located, erected, constructed, reconstructed, enlarged, structurally modified, or used in any Zoning District in West Chester Township." (Emphasis added.)
 {¶ 24} Zoning regulations, which deprive real property owners of certain uses of their property, must be strictly construed, and cannot be extended to include limitations not clearly prescribed. Sammons v.Village of Batavia (1988), 53 Ohio App.3d 87, 89-90. "Thus, in determining a permitted use of property under zoning classifications in which terms and language therein are not otherwise defined, common and ordinary meaning of such terms must be considered and the terms and language should be liberally construed in favor of the permitted use proposed by the property owner so as not to extend the restrictions to any limitation of use not clearly prescribed therein." Id. at 90.
 {¶ 25} After reviewing the record, we find that appellant's use of its property violated the plain language of the Zoning Resolution. According to the record, appellant used its stores to display, store, and sell merchandise, including mulch, rock salt, motor oil, windshield wiper fluid, soda, water, ice, propane tanks, and antifreeze, outside of a completely enclosed structure. Further, the record indicates that appellant used temporary commercial signs on its property without first obtaining a permit to do so. *Page 6 
 {¶ 26} Appellant argues the trial court erred in finding that appellant's "primary use of its property is as a convenience business." Appellant maintains that the Zoning Resolution does not contain a provision either permitting or prohibiting use of property as both a convenience business and an automobile fuel service station. Appellant claims that because it is both a convenience business and a fuel service station, and is neither exclusively one nor the other, the Zoning Resolution does not apply to its stores.
 {¶ 27} Despite appellant's arguments to the contrary, the record indicates that, while appellant's stores do serve as fuel service stations, appellant primarily uses its stores as convenience businesses. As district manager for the Cincinnati-Dayton Road store, Timothy Young, testified, "[w]e are a convenience [and] petroleum company. That's * * * what we do. [We] provide convenience." When asked to clarify whether appellant's business is more of a convenience business or a fuel service station, Young responded that it was a convenience business and further stated, "definitely, our focus is more on the inside."
 {¶ 28} Appellant next argues that the outdoor storage, display, and sale of merchandise are permissible accessory uses of its property. According to the Zoning Resolution 9.02, an "accessory use or structure" is defined as "a structure or use that is incidental to and customarily found in connection with a principal building or use; is subordinate to and serves a principal building; is subordinate in area, extent, or purpose to the principal building or principal use served and; is located on the same lot as the principal building or use served."
 {¶ 29} The Zoning Resolution permits accessory uses in the B-1, B-2, and M-2 districts. Zoning Resolution Sections 21.04, 22.04, and 25.04, as they apply to the B-1, B-2, and M-2 districts respectively, similarly provide:
 {¶ 30} "Accessory uses and structures shall be permitted of right provided they comply with the requirements of Article 10, Subsection 10.15 and all other requirements of this Article *Page 7 and other applicable requirements of the Resolution." (Emphasis added.)
 {¶ 31} As we have previously stated, the outdoor storage, display, and sale of merchandise is not permitted in the B-1, B-2, and M-2 districts. Accordingly, these uses do not comply with all applicable requirements of the Zoning Resolution, as required by Zoning Resolutions 21.04, 22.04, and 25.04, and thus cannot qualify as accessory uses.
 {¶ 32} Moreover, under the Zoning Resolution, an accessory use must be one that is "incidental" and "subordinate" to the principal building or use. Given our previous finding that appellant's primary use of its properties is for convenience businesses, the outdoor storage, display, and sale of merchandise cannot be considered incidental or subordinate to appellant's principal buildings or the use of its properties. Based on this reasoning, we also find appellant's reliance on West ChesterTwp. Bd. of Trustees v. Hubbard (June 1, 2004), Butler C.P. No. 2002-10-2728, (reversed on other grounds), to be misplaced.Hubbard is not binding on this court nor is it even applicable to this case. In Hubbard, the applicable provision of the Zoning Resolution does not prohibit the outdoor storage, display, and sale of merchandise. As discussed above, the applicable provisions of the Zoning Resolution in this case do prohibit such use.
 {¶ 33} Appellant's third assignment of error is overruled.
 {¶ 34} In its first assignment of error, appellant argues that the trial court erred in failing to grant its motion for summary judgment, because it was denied due process. Appellant maintains that appellee violated its due process rights by failing to notify appellant of the Zoning Resolution violation in writing. We disagree.
 {¶ 35} The right to procedural due process is required by theFourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. State ex rel. Plain DealerPublishing Co. v. Floyd, 111 Ohio St.3d 56, 2006-Ohio-4437, ¶ 45, citingState v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 6. Procedural due process requires *Page 8 
the government to give reasonable notice and a meaningful opportunity to be heard to those whose interests in life, liberty, or property are adversely affected by a governmental action. Atkinson v. Grumman OhioCorp. (1988), 37 Ohio St. 3d 80, 85; Crist v. Battle Run Fire Dist.
(1996), 115 Ohio App. 3d 191, 197. The opportunity to be heard must occur at a meaningful time and in a meaningful manner. Floyd,2006-Ohio-4437, ¶ 45, citing State v. Cowan, 103 Ohio St.3d 144,2004-Ohio-4777, ¶ 8.
 {¶ 36} Appellee brought this action against appellant pursuant to R.C.504.08, R.C. 519.24, and Zoning Resolution 5.08 and 5.09.
 {¶ 37} R.C. 504.08(A) provides: "[t]o enforce a township resolution adopted under this chapter, a board of township trustees may authorize the township law director to * * * [f]ile for injunctive relief if the violation of the resolution is a matter of health or safety."
 {¶ 38} R.C. 519.24, which is similar to Zoning Resolution 5.09, provides in part:
 {¶ 39} "In case any building is * * * maintained, or used or any land is or is proposed to be used in violation of sections 519.01 to 519.99, inclusive, of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such sections, such board, the prosecuting attorney of the county, the township zoning inspector, * * * in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful * * * maintenance, or use."
 {¶ 40} Zoning Resolution 5.08 provides:
 {¶ 41} "No building or land shall be * * * maintained, or used in violation of the provisions of this Resolution, or amendment or supplement to this Resolution * * * adopted by the Board of Township Trustees. Each day's continuation of a violation of this Resolution may be deemed a separate offense. Whoever violates this Resolution shall be fined not more than five hundred dollars ($500.00) for each offense." *Page 9 
 {¶ 42} According to the record, appellee sent written copies of a letter notifying appellant of the violations to appellant's 8370 Cincinnati-Dayton Road store and to P.O. Box 1458, Warrenville, IL 60555, which was the tax mailing address registered with the Butler County Auditor. Viltrakis, the 8370 Cincinnati-Dayton Road Store Manager, testified in her deposition that she received the written notice and notified her district manager, Young, of the notice. Young testified in his deposition that he picked up this letter when he returned from vacation sometime in July 2004. Further, appellant was notified that four of its stores, including the Cincinnati-Dayton Road store, were in violation of the Zoning Resolution in August 2004 at a meeting with the West Chester Township Department of Planning and Zoning.
 {¶ 43} After reviewing the record, we find that appellant received adequate notice of the violations, and had the opportunity to appeal the violations with the Board of Zoning Appeals, but chose not to do so. We remind appellant that, "[fundamental due process requires `notice' sufficient to apprise the defendant of the action's pendency so that objections by the defendant may be presented." Sampson v. Hooper Holmes,Inc. (1993), 91 Ohio App.3d 538, 540.
 {¶ 44} Moreover, nothing in the Zoning Resolution or R.C. 519.24
required appellee to provide notice before filing an action for an injunction against appellant for violations of the Zoning Resolution. Certainly, appellant had the opportunity to present its arguments before the trial court, and the trial court appropriately addressed these arguments.
 {¶ 45} Next, appellant argues that it was not required to pursue its administrative remedies, because it was not properly notified of the violations. While we have already held appellant received adequate notice of the violations, this argument is moot, as the trial court addressed the arguments in appellant's counterclaim in their entirety.
 {¶ 46} Appellant's first assignment of error is overruled. *Page 10 
 {¶ 47} In its second assignment of error, appellant argues that the trial court erred in failing to grant its motion for summary judgment, because it was denied equal protection of the law. Appellant maintains that appellee engaged in "selective enforcement" of the Zoning Regulations to appellant's detriment. We disagree.
 {¶ 48} The right to equal protection of the law is required by theFourteenth Amendment to the U.S. Constitution and Section 2, Article I
of the Ohio Constitution. McCrone v. Bank One Corp., 107 Ohio St.3d 272,2005-Ohio-6505, ¶ 6-7. If a law, while fair on its face, is applied so as "`* * * to make unjust and illegal discriminations between persons in similar circumstances, material to their rights,' there is a denial of equal protection * * *." State v. Flynt (1980), 63 Ohio St.2d 132, 134, quoting Yick Wo v. Hopkins (1886), 118 U.S. 356, 373-374, 6 S.Ct. 1064.
 {¶ 49} "However, the [U.S.] Supreme Court has held that the conscious exercise of some selectivity in enforcing a statute fair on its face does not in and of itself amount to a constitutional violation."City of Whitehall v. Moling (1987), 40 Ohio App.3d 66, 69, citingOyler v. Boles (1962), 368 U.S. 448, 456, 82 S.Ct. 501. In order for selective enforcement to amount to a denial of equal protection, an element of purposeful or intentional discrimination must be shown.Snowden v. Hughes (1944), 321 U.S. 1, 8-9, 64 S.Ct. 397; Flint at 134. "The burden of showing discriminatory enforcement is a heavy one and is not satisfied by a mere showing that others similarly situated have not been prosecuted." Moling at 69, citing State v. Freeman (1985),20 Ohio St.3d 55, 58.
 {¶ 50} "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad *Page 11 
faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." Flint, 63 Ohio St.2d at 134.
 {¶ 51} Appellant maintains that appellee selectively enforces the Zoning Resolution, and attempts to support this assertion by pointing out other businesses that also appear to be violating the same provisions. However, appellant has not met its burden of establishing a prima facie case of selective enforcement. Appellant has failed to demonstrate that even if these other businesses are similarly situated and that appellee has permitted the violations to continue, that appellee improperly proceeded with this action in bad faith. Moreover, the record indicates that appellee has sent violation notices to many of appellant's competitors that have been in violation of the Zoning Resolution in the past.
 {¶ 52} Appellant's second assignment of error is overruled.
 {¶ 53} In its seventh assignment of error, appellant argues that the trial court erred in failing to grant its motion for summary judgment because its rights under the First Amendment to the U.S. Constitution have been violated. Appellant maintains that appellee has improperly infringed on its right to communicate commercial speech to its customers, and that the Zoning Resolution impermissibly chills commercial speech by prohibiting temporary signs. We disagree.
 {¶ 54} Commercial speech receives some constitutional protection under the First Amendment to the United States Constitution, though it is afforded less constitutional protection than other constitutionally guaranteed forms of expression. Suburban Lodges of Am., Inc. v. ColumbusGraphics Comm. (2000), 145 Ohio App.3d 6, 11. Regulation of commercial speech will be upheld so long as it complies with the four-part test set forth in Central Hudson Gas and Elec. Corp. v. Public Serv. Comm'n ofN.Y. (1980), 447 U.S. 557, 566, 100 S.Ct. 2343, which provides: 1) the commercial speech must not be untruthful or misleading; 2) a restriction on protected commercial speech must seek to implement a *Page 12 
substantial government interest; 3) the regulation must directly advance the government interest; and 4) the restriction must not be more extensive than necessary to serve that interest. The party seeking to uphold a restriction on commercial speech bears the burden of showing that the regulation materially advances a substantial government interest. Greater New Orleans Broad. Ass'n. v. United States (1999),527 U.S. 173, 188, 119 S.Ct. 1923.
 {¶ 55} The parties do not dispute that appellant's temporary signs are not untruthful or misleading. Appellant maintains that appellee failed to meet its burden of proving that the regulation advances a substantial government interest. However, as the Fifth Appellate District stated inBench Signs Unlimited, Inc. v. Lake Twp. Bd. of Zoning Appeals,149 Ohio App.3d 462, 2002-Ohio-5436, ¶ 21, "[c]ourts have routinely upheld restrictions on commercial advertising signs in the interests of traffic safety and aesthetics." See, also, Genesis Outdoor, Inc. v. CuyahogaHts., Cuyahoga App. No. 79781, 2002-Ohio-2141.
 {¶ 56} "The Supreme Court has noted that the third and fourth prongs of the Central Hudson analysis `basically involve a consideration of the "fit" between the legislature's ends and the means chosen to accomplish those ends.' * * * This fit, however, need not be perfect, but reasonable; one `that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest served," * * * that employs not necessarily the least restrictive means but * * * a means narrowly tailored to achieve the desired objective.'"Suburban Lodges of Am., Inc. at 13.
 {¶ 57} Applying this "fit" test to the Zoning Resolution provisions prohibiting the use of temporary signs without a permit, we find that the provisions directly advance appellee's objective of promoting traffic safety, and that appellee has developed a means narrowly tailored to achieve this objective. It is important to note that the Zoning Resolution does not completely prohibit the use of temporary signs in the B-1, B-2, and M-2 districts. Rather, the Zoning Resolution prohibits the use of temporary signs without first obtaining a permit to do *Page 13 
so. The record indicates that on at least one occasion, appellant applied for and was granted such a permit, and there is nothing in the record to indicate that appellant has ever been denied such a permit.
 {¶ 58} Appellant's seventh assignment of error is overruled.
 {¶ 59} In its sixth assignment of error, appellant argues that the trial court erred in holding that appellant was not denied reasonable economic use of its property. Appellant maintains that it is entitled to relief pursuant to Section 1983, Title 42, U.S.Code. We disagree.
 {¶ 60} Section 1983, Title 42, U.S. Code states as follows:
 {¶ 61} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * * [.]"
 {¶ 62} To establish a claim under Section 1983, the party asserting such a claim must prove: (1) the violation of a right secured by the United States Constitution or federal law; and (2) that the alleged violation was committed by a person acting under color of state law.Am. Mfrs. Mut. Ins. Co. v. Sullivan (1999), 526 U.S. 40, 49-50,119 S.Ct. 977; Peoples Rights Org., Inc. v. Montgomery (2001),142 Ohio App.3d 443, 487.
 {¶ 63} In support of its Section 1983 claim, appellant merely reiterates the arguments made in support of its first and seventh assignments of error. As we have already found these arguments to be without merit, we likewise find that appellant's Section 1983 claim based on those arguments is without merit.
 {¶ 64} Appellant's sixth assignment of error is overruled. *Page 14 
 {¶ 65} In its fourth assignment of error, appellant argues that Zoning Resolution 20.041 and other similar provisions are unconstitutional. Appellant maintains that these provisions are impermissibly based on aesthetic concerns. We disagree.
 {¶ 66} Ohio townships do not have inherent or constitutionally granted police power, which is the power upon which zoning legislation is based.West Chester Twp. Zoning v. Fromm (2001), 145 Ohio App.3d 172, 178, citing Yorkavitz v. Columbia Twp. Bd. of Trustees (1957),166 Ohio St. 349, 351. However, R.C. 519.02 grants townships the authority to enact zoning regulations, and provides in relevant part that, "[f]or the purpose of promoting the public health, safety, and morals, the board of township trustees may * * * regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures, * * * the uses of buildings and other structures * * *."
 {¶ 67} "[A] zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community. Goldberg Cos., Inc. v. Council of theCity of Richmond Heights, 81 Ohio St.3d 207, 214, 1998-Ohio-207. The party challenging the constitutionality of a zoning classification bears the burden of proof, and must prove unconstitutionality "beyond fair debate." Id., citing Cent. Motors Corp. v. Pepper Pike,73 Ohio St.3d 581, 584, 1995-Ohio-289. In zoning law, the standard of "beyond fair debate" is analogous to the criminal law standard of "beyond reasonable doubt." Cent. Motors at 584.
 {¶ 68} After reviewing the record, we find that appellant has failed to meet its burden of showing, beyond fair debate, that Zoning Resolution 20.041 and other similar provisions of the Zoning Resolution are unconstitutional. Although appellant points to some testimony in the record that certain West Chester Township officials believe these provisions are aesthetically based, other officials testified that the purpose of these provisions is for the *Page 15 
safety of the general public. Further, the record indicates that at the Cincinnati-Dayton Road store, merchandise is stored in such a manner that the sidewalk in front of the store is almost completely blocked. Store manager Viltrakis testified that when merchandise is stored in this manner, customers might have to walk around cars and through the parking lot, rather than on the sidewalks, to access the store.
 {¶ 69} Likewise, Appellant does not meet its burden of proof by pointing out that the Zoning Resolution permits outside display of merchandise in districts zoned as Central Business Districts ("CBD"). This district classification has substantially different development standards, including larger minimum lot sizes and setbacks requirements. Because the B-1, B-2, and M-2 districts have smaller minimum lot sizes and setback requirements than CBD districts, provisions prohibiting outdoor storage, display, and sale of merchandise in these districts is substantially related to the promotion of the safety of the general public.
 {¶ 70} Appellant's fourth assignment of error is overruled.
 {¶ 71} In its fifth assignment of error, appellant argues that the trial court erred in granting appellee's summary judgment motion because appellee is estopped from enforcing the Zoning Resolution. Appellant maintains that before its Cincinnati-Dayton Road store was built, West Chester Township officials approved building plans that clearly depicted an outdoor ice machine and a storage container for propane gas tanks. Appellant concludes that appellee now is estopped from enforcing the Zoning Resolution provisions prohibiting such uses of appellant's property. We disagree.
 {¶ 72} Equitable estoppel "prevents] one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." Black's Law Dictionary (8th Ed.Rev.2004) 590. "The essential elements of equitable estoppel are: (1) the nonrelying party made a factual misrepresentation, (2) that *Page 16 
was misleading, (3) that induced actual reliance that was reasonable and in good faith, and (4) that caused detriment to the relying party."Bonham v. Hamilton, Butler App. No. CA2006-02-030, 2007-Ohio-349, ¶ 23, citing Thompson v. McVey, Clinton App. Nos. CA2006-03-006,-009,2006-Ohio-7036, ¶ 14.
 {¶ 73} Recently, the Ohio Supreme Court held in Horton v.Miamisburg, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 25, that, "[the doctrine] of equitable estoppel * * * [is] inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." Although a West Chester Township official erroneously approved appellant's building plan depicting the outdoor ice machine and propane tank storage container, appellee is not estopped from enforcing the Zoning Resolution based on this error.
 {¶ 74} Appellant's fifth assignment of error is overruled.
 {¶ 75} Judgment affirmed.
 WALSH, P.J., and YOUNG, J., concur. *Page 1