[Cite as *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5895.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. SCRIPPS MEDIA, INC., d.b.a. WCPO-TV, | : | CASE NO. C-130241 |
| | : | |
| Relator, | | *O P I N I O N.* |
| | : | |
| vs. | | |
| | : | |
| HON. TRACIE M. HUNTER, JUDGE, HAMILTON COUNTY JUVENILE COURT, | : | |
| | : | |
| Respondent. | : | |

Original Action in Prohibition and Mandamus

Judgment of the Court:  Writ of Prohibition Granted; Writ of Mandamus Denied

Date of Judgment Entry:  December 24, 2013

*Frost Brown Todd LLC, Jill P. Meyer* and *Monica L. Dias,* for Relator,

*McKinney & Namei Co., LPA, Firooz T. Namei* and *James F. Bogen,* for Respondent.

**CUNNINGHAM, Judge.**

{¶1}  This is an original action in which the relator, Scripps Media, Inc., d.b.a. WCPO-TV ("WCPO-TV"), a local television station, seeks writs of prohibition and mandamus involving the respondent, the Hon. Tracie M. Hunter, a judge of the Hamilton County Juvenile Court.

{¶2}  The relator seeks to prevent the respondent from enforcing blanket restrictions on WCPO-TV's access to and ability to report on juvenile delinquency proceedings instituted against six juveniles accused of the vicious beating of a local man. WCPO-TV alleges that Judge Hunter has imposed the restrictions, often without notice to WCPO-TV, without conducting an evidentiary hearing at which WCPO-TV could appear and challenge the restrictions, and without making the findings required to justify her actions.

{¶3}  We grant the writ of prohibition to prevent Judge Hunter from enforcing the access and reporting restrictions without conducting an evidentiary hearing and without making the required findings.

{¶4}  WCPO-TV also seeks a writ of mandamus to compel Judge Hunter to follow the mandates of the federal and Ohio constitutions, and the Ohio Supreme Court with regard to future access.  Because mandamus will not issue to require a judicial officer to prospectively observe the law, or to remedy the anticipated nonperformance of that duty, we deny the writ of mandamus.

### The North College Hill Cases

{¶5}  In August 2012, six 13- and 14-year-old juveniles beat and severely injured a 45-year-old North College Hill man.  The delinquency proceedings were

assigned to Judge Hunter for resolution.[1]

{¶6}    The North College Hill cases generated considerable public interest. Newspapers and television media organizations endeavored to cover the cases. At the commencement of the proceedings, attorneys for the alleged juvenile offenders moved to close the proceedings or to limit media coverage.

{¶7}    On August 24, 2012, counsel for WCPO-TV appeared before juvenile court Magistrate David M. Kelley, along with counsel for other news organizations, and the juveniles' defense counsel to respond to the motions. The assembled counsel informed the magistrate that they had arrived at "an agreed resolution" of the issues surrounding the media's access to the courtroom and limitations on its coverage in the courtroom. The magistrate questioned the parties to ensure that there was an agreement. While some counsel expressed reservation about some of the terms, there appeared to be general agreement as to the contours of the resolution.

{¶8}    Through its counsel, Monica L. Dias, WCPO-TV agreed not to televise the face or identifying marks of the juveniles when they were in the courtroom. WCPO-TV was to be permitted to televise the faces of anyone seated in the spectators' gallery, including the juveniles' parents. The news organizations, including WCPO-TV, would be permitted to televise the faces of attorneys, courtroom personnel and the judge, but not other individuals standing in front of the gallery and before the bench, unless unique or newsworthy events occurred such as an altercation between family members.

---

[1] The North College Hill cases consist of the following delinquency proceedings in the Hamilton County Juvenile Court: *In Re: Tyree Mizell*, Case Nos. 12-7285 and 12-7305; *In Re: Terrel Mizell*, Case Nos. 12-7288 and 12-7306; *In Re: Michael James*, Case Nos. 12-7279 and 12-7308; *In Re: Antonio Hendrix*, Case Nos. 12-7366 and 12-7367; *In Re: Lamont Champion*, Case Nos. 12-7278 and 12-7307; and, *In Re: Daquan Cain*, Case Nos. 12-7304 and 12-7303.

3

{¶9}   The parties agreed that since the names of the juveniles had been released by the police department and had been reported in the Cincinnati Enquirer, the names were a matter of public record.  Thus no blanket prohibition on printing, reporting, or using the names of the juveniles or their parents was imposed as part of the agreement.  At least one television station stated nonetheless that it would not use the juveniles' names as a matter of editorial policy.  WCPO-TV maintained that it could use the names but would try to avoid referring to the juveniles by name while playing audio recordings of their testimony.  The parties agreed that none of these restrictions would apply outside the courtroom.  The parties acknowledged that if the status of the case changed, then the agreement would be revisited.

{¶10}   Magistrate Kelley thanked the parties for reaching a workable agreement and stated that he intended to reduce the agreement to writing by the next day.  That, however, never occurred.

{¶11}   In early September 2012, the state filed a notice of intent to pursue serious youthful offender status for the juveniles. And that notice of intent transferred the proceedings from Magistrate Kelley to Judge Hunter's courtroom. Pursuant to Juv.R. 27(A)(1), serious youthful offender hearings shall be open to the public.

{¶12}   On September 6, 2012, WCPO-TV submitted a request to obtain a transcript of the August 24 proceedings before Magistrate Kelley that had memorialized the terms of the agreed resolution.  On February 19, 2013, Judge Hunter denied the request for a transcript of the proceedings based upon a literal interpretation of Juv.R. 2(Y) and Loc.R. 10(C) of the Hamilton County Juvenile Court and her conclusion that the media were not parties to the proceeding and thus were not entitled to a transcript.   Ultimately, on August 1, 2013, this court ordered the

4

administrative judge of the juvenile court, the court's ex officio clerk, to cause the filing of the transcript of the August 24 hearing in the record of this action.

{¶13}  In the first two weeks of September 2012, various WCPO-TV employees, including managing editor Jana Soete, signed and submitted applications requesting permission to televise courtroom proceedings.  The application forms contained standard language that permission to televise was contingent on the applicants following "the conditions established by the Supreme Court of Ohio."  The application did not contain restrictions on filming the juveniles' parents or persons who do not object to being filmed.  It contained no blanket proscription against naming or identifying the juveniles or their parents.

### The Disputed Access Orders

{¶14}  On September 17, 2012, Judge Hunter entered orders imposing significant new restrictions on WCPO-TV's coverage of the North College Hill cases. The orders, captioned "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings," provided that:

> The person(s) below hereby request permission to broadcast, televise, photograph, or otherwise record proceedings in the above captioned case under the provisions of Ohio Superintendence Rule 12.  We hereby certify that the conditions for recording established by the Supreme Court of Ohio and such rules as are established by this Court will be complied with and any cost arising therefrom shall be borne by the undersigned applicant(s).

{¶15}  The orders then provided a line upon which the applicant could acknowledge the order.  These orders contained the typewritten acknowledgement:

5

Channel 9 (WCPO)
Applicant

{¶16}   Immediately below the acknowledgement, the document continued as follows:

The Court, upon consideration of the above request, hereby grants its authorization to broadcast, televise, photograph, or otherwise record judicial proceedings in the above captioned matter, subject to the following conditions:

All persons approved to broadcast, televise, photograph, or record courtroom proceedings must comply with Ohio Rules of Superintendence, Rule 12 attached to this application / order.

All persons approved to broadcast, televise, photograph, or record courtroom proceedings must comply with Ohio Rules of Superintendence, Rule 12.

Broadcasts, videotape, photographs and recordings may include full images and sound of the judge and all courtroom staff.

In accordance with Superintendence Rule 12, all victims and witnesses may object to being filmed, videotaped, recorded, or photographed; and if they do object, they MAY NOT be filmed, videotaped, recorded, or photographed.

Juvenile Defendant may only be videotaped below the waist. Names of the defendants and their parents are barred from publication or broadcast for all current and future proceedings regarding this matter.  Photographs of the defendants' parents are prohibited, as it may compromise the safety of the juveniles.   If Defendants object at any time, a closure hearing will be conducted.

6

Otherwise, this journalization reflects the policy for all future proceedings in the above referenced matter.

Seek permission from the prosecutor and defense counsel regarding filming them.

{¶17} The document was signed and dated by Judge Hunter, and was entered on the journal in four of the North College Hill cases.

{¶18} In their affidavits, both Dias and Soete state that no employee or counsel of WCPO-TV had signed or typed the name of the television station in the applicant acknowledgement line. The September 17 order limiting WCPO-TV's access and coverage in Judge Hunter's courtroom was not served on WCPO-TV. WCPO-TV received a copy of the order only on March 29, 2013, after its counsel had obtained the document through a public-records request.

{¶19} On February 19, 2013, Judge Hunter entered additional orders restricting WCPO-TV's coverage. The orders contained language very similar to the September 17, 2012 orders. They were journalized in each of the 12 cases. But the February order, again captioned "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings," now provided that all persons approved to broadcast, televise, photograph, or record courtroom proceedings must comply with "Rule 14 of the Rules of Practice of the Hamilton County Juvenile Court," in addition to Ohio Rule of Superintendence 12. WCPO-TV again maintains that it did not sign the application although the typewritten name "WCPO-TV Channel 9" appears on the acknowledgement line.

{¶20} WCPO-TV's planning editor Jillian Parrish stated in her affidavit that on March 22, 2013, she signed an application containing restrictions like those in the February 19 application. She stated that she signed the application because Judge

7

Hunter's courtroom personnel had told her that WCPO-TV reporters would not be permitted to enter the courtroom, even without cameras or recording equipment, unless she signed the application.

{¶21} Finally, on March 25, 2013, Judge Hunter entered another order on the journal of four of the North College Hill cases. These orders, bearing the same caption, reprised the restrictions of the September 17 and February 19 orders but added a statement that: "If media applicant violates this order, the Judge may revoke violator(s) permission to broadcast, videotape, photograph, or record *all future courtroom proceedings*; and additionally may take any other actions available under law." (Emphasis added.)

{¶22} WCPO-TV again maintains, in managing editor Soete's affidavit, that it did not sign the application although the handwritten name "WCPO ABC 9" appears on the acknowledgement line.

### The Petition for Writs

{¶23} On April 19, 2013, WCPO-TV filed a petition in this court seeking a writ of prohibition to prevent Judge Hunter from exercising judicial power by enforcing the September 17, 2012, February 19, 2013, and March 25, 2013 access orders imposing blanket restrictions on WCPO-TV's access to and ability to report on the North College Hill cases. The restrictions include a ban on naming or identifying the alleged juvenile offenders and their parents, the imposition of overly broad restrictions on WCPO-TV's coverage in Judge Hunter's courtroom, and a requirement that WCPO-TV reporters sign and submit an "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings" as a condition of admittance even if the reporters do not intend to broadcast but merely listen to the proceedings. WCPO-TV alleges that Judge Hunter has imposed the restrictions

without conducting an evidentiary hearing at which WCPO-TV could appear and challenge proposed restrictions, and without making the findings required to justify her actions.

{¶24} WCPO also sought a writ of mandamus to compel Judge Hunter's future observance of controlling law on courtroom access. It also sought to recover attorney fees and the cost incurred in bringing the petition.

{¶25} On May 28, 2013, Judge Hunter, although represented by the prosecuting attorney of Hamilton County as statutory counsel, filed pro se a motion for leave to move to dismiss WCPO-TV's petition. On June 3, 2013, we sua sponte struck the pro se motion finding that it was "not a permissible pleading." Because Judge Hunter was being sued only in her official capacity as a judge of the Hamilton County Juvenile Court, her right to representation was prescribed by law and, thus, we held that Judge Hunter was obligated to comply with relevant provisions of R.C. 305.14(A) and 309.09(A).

{¶26} On June 6, 2013, Judge Hunter, now acting through her statutory counsel, moved for summary judgment on WCPO-TV's petition for writs. The motion raised only legal arguments that WCPO-TV had waived its right to challenge her courtroom restrictions. She also argued that WCPO-TV's applications to broadcast were nullities because they had not been signed by WCPO-TV's legal counsel.

{¶27} Three weeks later, WCPO-TV also moved for summary judgment. The motion was supported by the affidavits of Dias, Soete, and Parrish, filed with the petition, a subsequent affidavit of Dias, and a new affidavit of Griffin Frank, a WCPO-TV producer. Additional responsive pleadings were filed, and this court heard oral argument on the summary-judgment motions.

9

{¶28} Argument on Judge Hunter's behalf was made by her current statutory counsel. Though counsel had been substituted for previous counsel on August 30, 2013, he relayed upon inquiry by the court that he had received no response to his requests to meet or speak with Judge Hunter during the intervening two weeks. Counsel stated that communication from Judge Hunter had consisted only of one email that he had received approximately 40 minutes before the hearing.

### *A Writ of Prohibition: The Proper Challenge to Judge Hunter's Orders*

{¶29} A writ of prohibition directs a lower court to refrain from exercising authority over a matter beyond its jurisdiction. It is the proper action to challenge a juvenile court's interlocutory orders limiting access to court proceedings or restricting the recording or photographing of those proceedings. *See State ex rel. Plain Dealer Publishing Co. v. Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ 26; *see also State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, ¶ 14 and 20.

{¶30} To be entitled to a writ of prohibition, WCPO-TV must establish that Judge Hunter has or is about to exercise judicial or quasi-judicial power, that the exercise of that power is unauthorized by law, and that it lacks an adequate remedy in the ordinary course of law. *See State ex rel. Doe v. Capper*, 132 Ohio St.3d 365, 2012-Ohio-2686, 972 N.E.2d 553, ¶ 10; *see also State ex rel. Levin v. Sheffield Lake*, 70 Ohio St.3d 104, 106, 637 N.E.2d 319 (1994).

{¶31} A petition seeking prohibition is a civil action. *See* Civ.R. 1(A) and 1(C). Thus it may be resolved on summary judgment. *E.g., State ex rel. Denton v. Bedinghaus*, 1st Dist. Hamilton No. C-000819, 2002-Ohio-3273. Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come

to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *See* Civ.R. 56; *see also Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). The parties' election to address the issues by cross-motions for summary judgment demonstrate that both parties believe that no genuine issue of material fact is in dispute and that this court is free to render a decision as a matter of law. *See Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO*, 93 Ohio App.3d 162, 164, 638 N.E.2d 94 (1st Dist.1994).

### *Balancing Juvenile Offender Protection with Courtroom Access*

{¶32} Juvenile court delinquency proceedings are "neither presumed open nor presumed closed." *Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, at ¶ 27, citing *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas, Juvenile Div.*, 90 Ohio St.3d 79, 734 N.E.2d 1214 (2000). Thus the important interest in furthering the rehabilitation of juvenile offenders by protecting them from the harsh glare of public scrutiny must be balanced against the interests of the news media and the public in access to and accurate reporting of delinquency proceedings. The interest in closure is "less compelling in delinquency cases than in cases involving an abused, neglected, or dependent child because the 'delinquent child is at least partially responsible for the case being in court.' " *Geauga Cty. Court of Common Pleas, Juvenile Div.*, at 84, quoting *In re T.R.*, 52 Ohio St.3d 6, 16, 556 N.E.2d 439 (1990). The news media and the public "play an important role—and have certain rights—regarding the closure of juvenile-court proceedings." *In re Disqualification of Hunter*, 137 Ohio St.3d 1201, 2013-Ohio-4467, 997 N.E.2d 541, ¶ 6. Their access to juvenile delinquency proceedings can "serve as a check on potential abuse of power by judges and other public officials, and publicity might

11

prove beneficial to the juvenile and society by deterring future acts of delinquency and alerting parents to responsibilities toward their minor children." *Geauga Cty. Court of Common Pleas, Juvenile Div.*, at 84.

{¶33} In balancing these interests, WCPO-TV argues that Judge Hunter indulged her personal predilections rather than employing the analysis identified by the Ohio Supreme Court. We agree.

### *WCPO-TV Not Bound by the Kelley "Agreed Resolution"*

{¶34} On June 6, 2013, Judge Hunter moved for summary judgment on WCPO-TV's petition for prohibition and mandamus. She argues that WCPO-TV had waived certain rights, including the right to publish the names of the alleged juvenile offenders and the right to unrestricted filming of them, when its attorneys reached the agreed resolution with the juveniles' counsel during the August 24, 2012 hearing before Magistrate Kelley. Although Judge Hunter refused to provide WCPO-TV with a copy of the transcript of the proceedings before the magistrate, she now maintains that those proceedings reveal the terms of an enforceable agreement between WCPO-TV, the Cincinnati Enquirer, and counsel for the juvenile offenders. Therefore, she argues that WCPO-TV may not now seek to vindicate the rights to access and restriction-free reporting it bargained away. We disagree.

{¶35} It is undisputed that Magistrate Kelley never reduced the agreement to writing. While magistrates are authorized to enter orders necessary to regulate the proceedings before them, those orders must be reduced to writing, signed by the magistrate, and served on the parties or their counsel. *See* Juv.R. 40(C)(2) and 40(D)(2)(a)(ii).

{¶36} And a magistrate's order cannot, by itself, bind the juvenile court. A magistrate's "oversight of an issue or issues, even an entire trial, is not a substitute

for the [trial court's] judicial functions but only an aid to them." *Hartt v. Munobe*, 67 Ohio St.3d 3, 6, 615 N.E.2d 617 (1993) (construing the analogous provisions of Civ.R. 53); *see* Juv.R. 40(C)(1).

{¶37} Here there is no evidence of record that Judge Hunter adopted the unwritten terms of the agreed resolution. Her access orders make no reference at all to the proceedings before Magistrate Kelley. By journalizing the three challenged access and reporting orders, Judge Hunter effectively superseded any terms of the agreed resolution. The eviscerated agreement cannot be the basis of any alleged waiver by WCPO-TV of its rights to attend and to report on the North College Hill cases.

{¶38} We note that on May 10, 2013—before either party had moved for summary judgment—this court granted WCPO-TV's motion for an emergency stay. On the limited record then available, we ordered that WCPO-TV should have access to the North College Hill proceedings upon the terms and conditions delineated in the agreed resolution reached before Magistrate Kelley. Because it is now clear that Judge Hunter's access and coverage orders vitiated any agreement that had been reached, we vacate our May 10, 2013 order.

{¶39} Judge Hunter's final argument in favor of summary judgment, that the "applications" to attend and to report court proceedings filed on September 17, 2012, February 19, 2013, and March 25, 2013, are legal "nullities" because they were not signed by counsel, is feckless. There is no basis in law for requiring legal counsel to sign the written requests "for permission for the broadcasting, televising, recording, or taking of photographs." *See, e.g.*, Sup.R. 12(A) and Loc.Juv.R. 14. To adopt Judge Hunter's reasoning would require every reporter to be accompanied by

counsel each time he or she entered the courtroom. We will not sanction placing that additional burden on reporters.

**{¶40}** Judge Hunter's motion for summary judgment is overruled.

### *Judge Hunter's Blanket Access and Reporting Restrictions Are Unauthorized by Law*

**{¶41}** WCPO-TV also moved for summary judgment on its petition for the writs. The gravamen of its argument is that Judge Hunter exercised judicial power to restrict WCPO-TV's access to and ability to report on the North College Hill cases without conducting an evidentiary hearing or making the findings required by precedent to justify her actions. She continues to impose these blanket restrictions. And WCPO-TV lacks any other adequate remedy in the ordinary course of law.

**{¶42}** A juvenile court is required to examine, in each case, the competing interests of confidentiality and access before ordering closure or restrictions on news media reporting. Blanket or standing orders to restrict access are not authorized by law. *See Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ at 29. Neither are orders based upon the "self-evident harm" to an accused juvenile, or upon a judge's personal presumption of closure. *See Geauga Cty. Court of Common Pleas, Juvenile Div.*, 90 Ohio St.3d at 87, 734 N.E.2d 1214.

**{¶43}** A juvenile court may not restrict news media and public access to a delinquency proceeding unless the court entertains "evidence and argument on the issue, [and then] finds that (1) there exists a reasonable and substantial basis for believing that public access could harm the child or endanger the fairness of the adjudication, (2) the potential for harm outweighs the benefits of public access, and (3) there are no reasonable alternatives to closure." *Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ at 27, citing *Geauga Cty. Court of Common Pleas,*

*Juvenile Div.*, 90 Ohio St.3d at 85, 734 N.E.2d 1214. The burden of establishing these factors is on the party seeking closure of the delinquency proceeding and not on the news organization seeking to cover the court proceedings. *See Floyd* at ¶ 27.

**{¶44}** The same hearing-and-findings requirement applies to a juvenile court order restricting the manner in which the news media may televise or photograph an alleged delinquent offender. *See Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, at ¶ 17 and 19.

**{¶45}** The *Floyd/Geer* hearing requirement is echoed in R.C. 2151.35(A)(1), which provides that the juvenile court "may exclude the general public from its hearings in a particular case *if* the court holds a separate hearing to determine whether that exclusion is appropriate." (Emphasis added.) Even if the court excludes the general public, "the court still may admit to a particular hearing or all of the hearings relating to a particular case * * * those who demonstrate that their need for access outweighs the interest in keeping the hearing closed." *Id.* Similarly, Juv.R. 27(A)(1) provides that while serious youthful offender hearings shall be open to the public, in "all other proceedings, the court may exclude the general public from any hearing, but may not exclude * * * [p]ersons who demonstrate, at a hearing, a countervailing right to be present." News media organizations are parties that can argue for a countervailing right to be present. *See Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, at ¶ 33.

**{¶46}** Even the Hamilton County Juvenile Court's own local rules contemplate a hearing before closure. Loc.Juv.R. 15 permits a party to a proceeding to request closure. The party's "written or oral motion * * * shall be made as far in advance as is reasonably possible to allow the court to conduct a hearing and rule on the request without unnecessarily delaying the proceedings."

**{¶47}** Where a juvenile court enters an order restricting access to or media coverage of a delinquency proceeding without conducting an evidentiary hearing and making the required *Floyd/Geer* findings, which are properly supported by the evidence adduced, the court's order is unauthorized by law. *See Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, at ¶ 32; *see also Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, at ¶ 20. A writ of prohibition will issue to prevent the judge from enforcing that order and from "entering a future restriction without allowing all parties affected to have the opportunity to respond to the possibility of a restriction before the order is entered." *Geer* at ¶ 20; *see Floyd* at ¶ 36.

**{¶48}** Here, it is undisputed that Judge Hunter exercised judicial power by entering the September 17, 2012, February 19, 2013, and March 25, 2013 access orders. The orders compelled WCPO-TV to photograph the alleged North College Hill offenders only "below the waist." WCPO-TV was prohibited from photographing the juveniles' parents. They required WCPO-TV to seek permission from the prosecutor and defense attorneys prior to photographing counsel. They barred WCPO-TV from publishing or broadcasting the names of the juvenile offenders "for all current and future proceedings regarding this matter." And Judge Hunter's courtroom personnel required WCPO-TV reporters and editors to sign an "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings," containing all the challenged restrictions, before being permitting to enter the courtroom even when the reporters carried no cameras or recording devices.

**{¶49}** It is also undisputed that Judge Hunter entered the access orders without holding an evidentiary hearing at which WCPO-TV was given the opportunity to respond to the proposed restrictions, and without making the *Floyd/Geer* findings. The

September 17, 2012, February 19, 2013, and March 25, 2013, access orders were thus unauthorized by law.

### Juvenile Court Rules Do Not Authorize a Blanket Restriction on Naming An Alleged Offender in a Delinquency Proceeding

{¶50} Judge Hunter does not dispute that she did not hold a hearing at which WCPO-TV was given the opportunity to challenge the access and reporting restrictions. Judge Hunter nonetheless argues that WCPO-TV is not entitled, as a matter of law, to summary judgment on that portion of its petition seeking to prohibit enforcement of her blanket restriction on publishing or broadcasting the names and identities of the alleged North College Hill offenders and their parents. Judge Hunter argues that Sup.R. 12, "Conditions for Broadcasting and Photographing Court Proceedings," and Loc.Juv.R. 14, "Broadcasting, Televising, Photographing, or Recording of Proceedings," provide authority to impose this restriction on the news media.

{¶51} WCPO-TV argues that the blanket ban is an overly broad and unconstitutional prior restraint on news organizations, and that the superintendence and local rules do not give Judge Hunter the power to enforce these restrictions. By their express terms, the access orders bar WCPO-TV from publishing or broadcasting the names of the alleged juvenile offenders and their parents "for all current and future proceedings regarding this matter." WCPO-TV argues that the orders would authorize sanctions against WCPO-TV if it reported the names of the juveniles or their parents even if WCPO-TV had obtained the names outside the courtroom through public records, from the police, or from community members.

{¶52} We have recently granted another news organization a writ of mandamus compelling Judge Hunter to release the full names of the alleged North College Hill offenders. *See State ex rel. The Cincinnati Enquirer v. Hunter*, 1st Dist.

Hamilton No. C-130072, 2013-Ohio-4459. We held that the rules of superintendence provide for public access to juvenile court delinquency records, and that Judge Hunter's blanket claim that juveniles in delinquency cases are entitled to confidentiality could not limit the newspaper's request for a copy of the judge's docket including the full names of the juveniles, not just their initials. *See id.* at ¶ 12.

{¶53} Moreover, Sup.R. 12 and Loc.Juv.R. 14(D) provide no justification for Judge Hunter's blanket restrictions on naming the alleged North College Hill offenders and their parents. Sup.R. 12(A) provides, in pertinent part:

> The judge assigned to the trial or hearing *shall permit* the broadcasting or recording by electronic means and the taking of photographs in court proceedings that are open to the public as provided by Ohio law.

(Emphasis added.)

{¶54} The only express limitation contained in subsection (A) is that requests for permission to broadcast, record, or photograph in the courtroom must be made in writing. *See* Sup.R. 12(A). The rule provides that "[a]fter consultation with the media, the judge shall specify the place or places in the courtroom where the operators and equipment are to be positioned." *Id.* The resulting order of the judge must be made a part of the record of the proceedings. *See id.*

{¶55} The remainder of the rule discusses what equipment and operators are permitted in the courtroom and where they may be positioned. Its clear purpose is to afford access to and coverage of court proceedings while minimizing any interference with the orderly administration of justice. For example, Sup.R. 12(B)(7) requires that still photographers and television and radio representatives shall be afforded clear views within the courtroom but generally may not be permitted to

18

move to different locations during the proceedings. Subsection (C) states certain prohibitions about what and who may be photographed. For example, the judge is required to inform victims and witnesses that they have a right to object to being filmed. *See* Sup.R. 12(C)(2). Sup.R. 12(D) provides that violations of the conditions prescribed by the rule or the judge may be punished by revocation of "permission to broadcast or photograph the trial or hearing."

{¶56} Nowhere in the rule is there specific authority upon which Judge Hunter could rely to ban the naming of the juveniles or their parents. The rule is not even a sufficient basis to enforce Judge Hunter's below-the-waist-only restriction on the photographing of the juveniles. The Ohio Supreme Court has held that none of the exceptions to Sup.R. 12 bar photographing a juvenile's face in a delinquency proceeding. *See Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, 873 N.E.2d 314, at ¶ 17.

{¶57} Similarly, the Hamilton County Juvenile Court local rules do not provide any basis for Judge Hunter to bar WCPO-TV from publishing or broadcasting the names of the alleged juvenile offenders or their parents. The first three subsections of Loc.Juv.R. 14 parrot the permission process and logistical sweep of Sup.R. 12. Loc.Juv.R. 14(D), however, provides:

> The filming, videotaping, recording, or photographing of a victim, witness, or juror is prohibited without specific authorization of the court. *If the subject matter of the proceeding is a child*, the name or identity of any party, witness, child, parent, or participant shall not be disclosed unless by specific authorization of the court.

(Emphasis added.)

{¶58} The first sentence of the rule clearly prevents the filming of victims, witnesses, and jurors without prior permission. But Judge Hunter construes the

second sentence of the rule, proscribing publication of the name or identify of nearly every juvenile court participant save court personnel or counsel without judicial authorization, to apply in all juvenile court proceedings, including abuse, neglect, dependency, custody, *and* delinquency proceedings. Although the rule simply requires prior judicial permission to name participants, Judge Hunter has placed a blanket denial of permission in her access orders and has predicated news media attendance on compliance with that proscription. WCPO-TV argues that Loc.Juv.R. 14(D) does not apply in delinquency proceedings.

{¶59} In construing a rule or statute, we must assume that words are not inserted by the drafters without some purpose. *See Cheap Escape Co. v. Haddox LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 16. The drafters chose to include the introductory phrase, "If the subject matter of the proceeding is a child," and we must afford those words some meaning. The only logical interpretation is that the phrase limits the use of the broad naming proscriptions to abuse, neglect, custody and dependency proceedings. In those cases the subject matter is indeed a child and his or her familial relationships and custody status. The broad restrictions against naming any party, witness, child, parent, or participant make sense in those proceedings where protection of the child from public scrutiny is paramount. To hold as Judge Hunter does, that the naming proscriptions apply in delinquency proceedings as well, would render the introductory phrase meaningless. And it would contradict the Ohio Supreme Court's position that the need for confidentiality is less compelling in delinquency cases than in cases involving abused, dependent or neglected children. *See Geauga Cty. Court of Common Pleas, Juvenile Div.*, 90 Ohio St.3d at 84-85, 734 N.E.2d 1214.

20

**{¶60}** Therefore, it is undisputed that Judge Hunter entered orders barring WCPO-TV from publishing or broadcasting the names of the alleged juvenile offenders and their parents "for all current and future proceedings regarding this matter," without holding a hearing at which WCPO-TV was given the opportunity to respond to the proposed restrictions, and without making the *Floyd/Geer* findings. That portion of the September 17, 2012, February 19, 2013, and March 25, 2013 access orders was thus unauthorized by law.

**{¶61}** As we are able to grant WCPO-TV the remedy its seeks—removal of the blanket ban on naming the juveniles and their parents—on the basis of Judge Hunter's failure to follow the *Floyd/Geer* precedent, we need not address its constitutional, prior-restraint argument. *See Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54 ("courts decide constitutional issues only when absolutely necessary").

### *No Prior Permission is Required Merely to Attend a Delinquency Proceeding*

**{¶62}** In support of its motion for summary judgment, WCPO-TV also states that its reporters were compelled by Judge Hunter's courtroom personnel to sign an "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings," containing all the challenged restrictions, before being permitted to enter the courtroom even when the reporters carried no cameras or recording devices. WCPO-TV editors stated in their affidavits that they were compelled to sign the application to enter the courtroom even when they did not intend to broadcast, televise, photograph or otherwise record the proceedings. And, WCPO-TV's planning editor was required to certify that the restrictions would be complied with. WCPO-TV argues that Judge Hunter may not require any person, reporter or not, to request permission to merely attend an otherwise open delinquency hearing.

{¶63} This matter arises on WCPO-TV's motion for summary judgment. WCPO-TV has discharged its initial burden of demonstrating that Judge Hunter's courtroom personnel required reporters to complete an application as a condition of entry into her courtroom. *See* Civ.R. 56(A). Thus Judge Hunter cannot rest on the allegations or denials in the pleadings. To defeat WCPO-TV's motion she must set forth specific facts, by the means listed in Civ.R. 56(C) and 56(E), showing that triable issues of fact exist on WCPO-TV's claim. *See Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶64} In *State ex rel. The Cincinnati Enquirer v. Hunter*, 1st Dist. Hamilton No. C-130397, 2013-Ohio-4567, we recently denied a writ of prohibition to a newspaper on virtually the same issue. The newspaper had alleged that Judge Hunter was requiring the media to seek permission merely to attend court proceedings in the North College Hill cases. We denied the writ, in part, because the record lacked evidence that Judge Hunter had a standing order enforceable by her courtroom personnel requiring members of the media, not seeking to electronically record the proceedings, but merely to listen, to request permission to attend a hearing. *See id.* at ¶ 8. This conclusion was bolstered by the affidavit of Judge Hunter's staff attorney, filed in support of the judge's motion for summary judgment, in which the attorney indicated that she had sought clarification from Judge Hunter to see if the reporter could attend "after learning that [the reporter] merely wanted to listen to the hearing." *Id.*

{¶65} Here Judge Hunter has produced no evidence of any kind to dispute WCPO-TV's claim that the courtroom personnel were carrying out Judge Hunter's directive requiring the media to seek permission prior to attending proceedings in her courtroom. *See Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. And this court is free to enter judgment as a matter of law.

{¶66} We agree with WCPO-TV that there is no basis in law for requiring any person to request permission merely to attend an otherwise open delinquency hearing. By their own terms the access applications and the orders created from them apply only to those who seek "permission to broadcast, televise, photograph, or otherwise record proceedings." As we have explained above, neither Sup.R. 12 nor Loc.Juv.R. 14 place any limitation upon mere attendance at an otherwise public proceeding.

{¶67} Therefore, as enforced by her courtroom personnel, Judge Hunter's directive requiring an application merely to attend court proceedings served to restrict access to WCPO-TV reporters without a hearing and without making the *Floyd/Geer* findings. The orders were thus unauthorized by law.

{¶68} In summary, we hold that Judge Hunter's imposition of access and coverage restrictions, via her September 17, 2012, February 19, 2013, and March 25, 2013 orders that (1) compel WCPO-TV to photograph the alleged North College Hill offenders only "below the waist," (2) prohibit WCPO-TV from photographing the juveniles' parents, (3) require WCPO-TV to seek permission from the prosecutor and defense counsel prior to photographing them, (4) impose a blanket ban on WCPO-TV from publishing or broadcasting the names or identities of the alleged juvenile offenders and their parents "for all current and future proceedings regarding this matter," and (5) require WCPO-TV reporters and editors merely attending court proceedings to sign an "Application Requesting Permission to Broadcast, Televise, Photograph, or Record Courtroom Proceedings," are unauthorized by law.

{¶69} Thus WCPO-TV is entitled to a writ of prohibition to prevent Judge Hunter from enforcing the September 17, 2012, February 19, 2013, and March 25, 2013 access orders and to prevent her from imposing future restrictions without holding a

hearing and issuing findings in accordance with this opinion and the Ohio Supreme Court's decisions in *Floyd* and *Geer.*

### No Mandamus to Compel Prospective Observance of the Law

{¶70} Finally, WCPO-TV has moved for summary judgment on its petition for a writ of mandamus to compel Judge Hunter to follow the mandates of the federal and Ohio constitutions and the Ohio Supreme Court with regard to future access to her courtroom and coverage of the North College Hill cases. The writ thus seeks to control the prospective, quotidian operation of Judge Hunter's courtroom.

{¶71} But mandamus may only be employed to compel the performance of a present existing duty as to which there is a present default. *See State ex rel. Home Care Pharmacy, Inc. v. Creasy*, 67 Ohio St.2d 342, 343-344, 423 N.E.2d 482 (1981). Mandamus will not issue to require a judicial officer to prospectively observe the law, or to remedy the anticipated nonperformance of that duty. *See id.* at 343; *see also State ex rel. Kay v. Fuerst*, 156 Ohio St. 188, 188, 101 N.E.2d 730 (1951); *State ex rel. City of East Cleveland v. Norton*, 8th Dist. Cuyahoga No. 98772, 2013-Ohio-3723, ¶ 11.

{¶72} While mandamus will not issue to compel the observance of the law generally, judges are not free to resolve matters in a vacuum. A principal obligation of any judicial officer is to "comply with the law," including decisional law announced by superior courts. Jud.Cond.R. 1.1. Other remedies, including contempt proceedings, other extraordinary writs, and attorney and judicial discipline remain if a judicial officer persists in deviating from the law announced by this court and the Ohio Supreme Court.

{¶73} Accordingly, we overrule WCPO-TV's motion for summary judgment on its petition for mandamus. The writ is denied.

## Conclusion

{¶74} We hold that WCPO-TV has established that Judge Hunter has or is about to exercise judicial power, that the exercise of that power is unauthorized by law, and that it lacks an adequate remedy in the ordinary course of law. We therefore grant the requested writ of prohibition to prevent Judge Hunter from enforcing the September 17, 2012, February 19, 2013, and March 25, 2013 access orders and to prevent her from imposing future restrictions without holding a hearing and issuing findings in accordance with this opinion and the Ohio Supreme Court's decisions in *Floyd* and *Geer.*

{¶75} Because a writ of mandamus will not issue to require Judge Hunter to prospectively observe the law, or to remedy the anticipated nonperformance of that duty, we deny the writ of mandamus.

{¶76} We allow no fees or costs in this initial action. We also vacate our May 10, 2013 order granting WCPO-TV's motion for an emergency stay.

{¶77} Having issued the writ of prohibition, Judge Hunter is hereby ordered to vacate each of the September 17, 2012, February 19, 2013, and March 25, 2013 access orders entered in the various North College Hill cases, and to verify her compliance with the writ by providing this court with a certified copy of her entries vacating the access orders no later than Tuesday, January 7, 2014.

Writ of prohibition granted; writ of mandamus denied.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry this date.