[Cite as *State ex rel. Livingston v. Bates*, 2018-Ohio-3986.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio, ex rel.                                    Court of Appeals No. L-18-1135
Nathaniel Livingston, Jr.

      Relator

v.

James Douglas Bates, et al.                    **DECISION AND JUDGMENT**

      Respondents                          Decided:  September 28, 2018

* * * * *

Nathaniel Livingston, Jr., pro se.

Julia R. Bates, Lucas County Prosecuting Attorney, Kevin A.
Pituch and Evy M. Jarrett, Assistant Prosecuting Attorneys,
for respondents.

* * * * *

**MAYLE, J.**

{¶ 1} This case is before the court upon a motion for summary judgment filed on

July 25, 2018, by respondents James Douglas Bates, Presiding Judge, Lucas County

Court of Common Pleas; Gene Anthony Zmuda, Administrative Judge, Lucas County

Court of Common Pleas; Brian John Patrick, Court Administrator, Lucas County Common Pleas Court; Roger Wayne Kerner, Jr., Court Deputies Director, Lucas County Common Pleas Court; Chris Kilif, Bailiff, Lucas County Common Pleas Court; and John R. Tharp, Lucas County Sheriff. Relator, Nathaniel Livingston, Jr., has filed a memorandum in opposition to respondents' motion. For the reasons that follow, we find respondents' motion well-taken.

## I. Background

{¶ 2} Nathaniel Livingston, Jr. is the author of The Toledo Black Blog and The Cincinnati Black Blog. He describes himself as a "Black man and a trained paralegal" who has "parlayed his paraprofessional skills into his work as a civil rights advocate," and has become "a published advocacy journalist and leader in the civil rights movement."

{¶ 3} Livingston filed an original action for writ of prohibition and mandamus in this court on June 18, 2018. In his sworn complaint, he alleges that in late August 2016, while he was observing the criminal trial of a former Toledo police lieutenant in the courtroom of Judge Gene Zmuda, Judge Zmuda ordered his "courtroom overseer" to notify Livingston that he was not permitted to "freely enter or exit the courtroom" without Judge Zmuda's permission. Livingston was told that his movement in the courtroom was distracting to the court and to the jurors. Apparently believing that Judge Zmuda's actions were on account of his race, Livingston wrote a letter to Judge Zmuda on September 1, 2016, accusing him of treating him like a "Black slave," and urging him

2.

to comply with the Ohio Judicial Code of Conduct and to refrain from engaging in "racial discrimination, bias, prejudice, or harassment." Livingston also claimed in that letter that Judge Zmuda failed to similarly admonish another courtroom spectator, an older white male, who had been moving around the courtroom and who failed to stand when Judge Zmuda and the jurors entered and exited the courtroom.

{¶ 4} Livingston maintains that in retaliation for complaining about his discriminatory conduct, Judge Zmuda "and his buddy Judge Bates" instructed Roger Kerner, the court deputies director, to harass him and other members of the public who wished to observe court proceedings. Livingston claims that Kerner and his employees followed him around the courthouse and "interfere[d] with his ability to interview and talk freely with members of the public, [his] colleagues in the press, and court employees." He insists that every Lucas County Common Pleas judge knows of this harassment and has done nothing to stop it.

{¶ 5} Livingston also alleges that on June 14, 2018, courtroom deputies physically prevented him from entering Judge Bates' courtroom, purportedly because Judge Bates does not allow observers in the courtroom once he begins instructing the jury. Livingston went to Patrick's office to request a copy of the court's order or policy to this effect, but Patrick told him that there was no written order or policy—it was simply a long-standing practice in all courtrooms. Later, Livingston claims, Kerner and a deputy again prevented him from entering the courtroom, this time stating that only court employees could enter while the jury was deliberating.

3.

{¶ 6} Livingston asserts that an unidentified Black woman approached him in the hallway and told him that Judge Bates had systematically kicked Black people out of the courtroom throughout the trial. Livingston also observed that a Black woman employed by a local television station had been allowed in the courtroom when he had been denied access, so he again tried to enter, and Kerner again prevented him from doing so.

{¶ 7} Livingston went to complain to Judge Zmuda about Judge Bates' conduct in restricting his access to the courtroom, and while waiting to speak with him, Chris Kilif, Judge Bates' bailiff, told Livingston that per Judge Bates' unwritten policy, no one could authorize Livingston to enter the courtroom.

{¶ 8} Judge Zmuda met with Kerner and Patrick in his office. After their meeting, Patrick told Livingston that Judge Zmuda said that while he does not enforce such a procedure in his courtroom, he could not or would not prevent Judge Bates from doing so. Livingston attempted to confront Judge Bates but was not permitted to speak with him.

{¶ 9} Livingston professes that now that he knows that select people are being denied access to the courtroom, he wants to (1) make sure that no one—including the judge and his staff—tampers with the jury, (2) monitor Judge Bates, his staff, and those who enter his courtroom, (3) monitor and observe other common pleas court judges and their staff, and (4) gather information to be published in The Toledo Black Blog and elsewhere. He filed this action, seeking a writ of mandamus or prohibition against those he claims are responsible for interfering with his right to attend court proceedings. He

4.

claims that respondents have a clear legal duty to allow him to attend court proceedings, and "to hear evidence and argument and make findings of fact and conclusions of law before restricting access to proceedings in their courtrooms."

{¶ 10} Livingston requested that we issue a peremptory or alternative writ of prohibition and mandamus against the respondents prohibiting them from enforcing orders, rules, policies, procedures, or protocols excluding him from observing court proceedings. He also sought costs and attorney fees.

{¶ 11} In a decision dated July 12, 2018, we found that the Lucas County Common Pleas Court is not a proper party to this action, and we dismissed the claims against it. As to the remaining respondents, we issued an alternative writ under R.C. 2731.06 and 2731.07, ordering that respondents, by July 30, 2018, either do the act requested by relator in his petition or show cause why they are not required to do so by filing (1) an answer to relator's petition pursuant to Civ.R. 8(B), or (2) a motion to dismiss relator's petition pursuant to Civ.R. 12. We also issued a scheduling order, permitting the parties to file motions for summary judgment no later than September 14, 2018.

{¶ 12} On July 25, 2018, respondents filed an answer and a motion for summary judgment. Livingston has opposed respondents' motion. The motion is now decisional.

## II. Legal Standard

{¶ 13} A motion for summary judgment may be granted under Civ.R. 56(C) when it is demonstrated "(1) that there is no genuine issue as to any material fact; (2) that the

5.

moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978).

{¶ 14} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III.  Law and Analysis

{¶ 15} In their motion, respondents deny Livingston's allegations that Judge Bates or Judge Zmuda closed their courtrooms in violation of the U.S. and Ohio Constitutions.

6.

Rather, they clarify, Judge Bates (1) prohibits spectators from entering or leaving the courtroom while he is instructing the jury, but allows those already in the courtroom to stay; (2) bars non-staff from entering the courtroom while the jury is deliberating; and (3) limits access to the courtroom when court is not in session. Judge Bates contends that there is no courthouse-wide policy delineating these restrictions; rather it is within the discretion of each judge to determine how best to preserve order and limit distractions during jury trials. Judge Bates maintains that Livingston was barred from the courtroom only to the extent that he sought to enter during jury instructions, while the jury was deliberating, or while court was not in session.

{¶ 16} Respondents insist that Judges Bates' practices—and any limitations that Judge Zmuda may place on spectators' ingress and egress from the courtroom to minimize distractions during proceedings—do not violate the U.S. or Ohio Constitutions.

{¶ 17} As to Patrick and Kerner, respondents contend that these individuals are non-judges, subject to the direction of the ten common-pleas court judges, and lack the authority to set policy for the judges. Kilif, they claim, is one of two bailiffs employed by Judge Bates, and also lacks authority to set policy. And, they maintain, Tharp had no involvement with Livingston being denied access to any courtroom. Respondents argue that the claims against them must be dismissed.

{¶ 18} Finally, respondents maintain that Livingston is not entitled to attorney fees because (1) his claims are meritless, (2) such fees cannot be assessed in original actions

7.

unless authorized by statute, and (3) as a pro se litigant, he cannot recover fees under Ohio law.

{¶ 19} The right of the public to attend criminal proceedings is implicit in the guarantees of the First Amendment to the U.S. Constitution as applied to the states through the Fourteenth Amendment. *State ex rel. Repository v. Unger*, 28 Ohio St.3d 418, 420, 504 N.E.2d 37 (1986). The public may be barred from criminal proceedings only where closure is essential "to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 420. A writ of prohibition—not mandamus—is the proper vehicle to challenge an order of a trial court closing court proceedings. *State ex rel. News Herald v. Ottawa Cty. Court of Common Pleas, Juvenile Div.*, 77 Ohio St.3d 40, 43, 671 N.E.2d 5 (1996); *State ex rel. Scripps Media, Inc. v. Hunter*, 1st Dist. Hamilton No. C-130241, 2013-Ohio-5895, ¶ 71 ("[M]andamus may only be employed to compel the performance of a present existing duty as to which there is a present default. * * * Mandamus will not issue to require a judicial officer to prospectively observe the law, or to remedy the anticipated nonperformance of that duty." (Citations omitted.)). "Members of the press and public who seek access to a closed court proceeding have standing to seek a writ of prohibition for this purpose." *State ex rel. Plain Dealer Publishing Co. v. Floyd*, 111 Ohio St.3d 56, 2006-Ohio-4437, 855 N.E.2d 35, ¶ 26, citing *In re T.R.*, 52 Ohio St.3d 6, 556 N.E.2d 439 (1990), paragraph one of the syllabus.

{¶ 20} A trial judge has the authority to exercise control over the proceedings in his or her courtroom. *State v. Sanders*, 130 Ohio App.3d 92, 97, 719 N.E.2d 619 (1st

8.

Dist.1998). To that end, "[r]easonable time, place, and manner limitations on access to the courtroom are permitted to ensure the fair and efficient administration of justice." *Herring v. Meachum*, 11 F.3d 374, 380 (2d Cir.1993). Such limitations do not necessarily constitute a courtroom closure implicating the constitutional right of the public to attend criminal proceedings.

{¶ 21} For instance, in *State v. Moton*, 8th Dist. Cuyahoga No. 104470, 2018-Ohio-737, ¶ 21, the appellate court found that it was reasonable and within the trial judge's discretion to ask spectators to refrain from entering and exiting the courtroom while court was in session. The court held that "[t]he movement of people in and out of the courtroom was a legitimate concern" and had become distracting to the trial judge, particularly in the middle of witnesses' testimony. *Id.* The court determined that "the trial judge was not excluding the public from the courtroom, but only asking these persons to refrain from entering and exiting the courtroom so that the trial judge could maintain control over the courtroom." *Id.*

Similarly, in *State v. Wilks*, Slip Opinion No. 2018-Ohio-1562, ¶ 69-74, the trial court locked the courtroom doors during jury instructions and announced to spectators that while they were welcome to stay, they would not be permitted to leave the courtroom during the 30-minute jury charge. The Ohio Supreme Court found no violation of the defendant's right to a public trial. The court observed that the restricted access to the courtroom was presumably for the purpose of avoiding distracting the jury during the

9.

instructions, and it determined that the public was prevented from entering and leaving the courtroom for only a brief period.

{¶ 22} And in *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 18, the trial court allowed those already in the courtroom to remain there for closing arguments, however, it limited ingress and egress to the courtroom until closing arguments concluded. The appellate court recognized that this restriction was imposed "[i]n an effort to preserve decorum and exercise control of the courtroom," and, specifically, "to prevent distractions to the jury, so that they could listen to the closing arguments without interruptions." *Id.* The court found that the public had not been improperly excluded from the courtroom.

{¶ 23} The conclusions reached in these cases are consistent with those reached by federal and other state courts. *See, e.g., Herring*, 11 F.3d at 380 (finding that trial judge's order locking courtroom doors during jury charge—while allowing those already inside to remain—was reasonable in light of his articulated purpose to avoid jury distraction while the charge was being delivered); *United States v. Scott*, 564 F.3d 34, 37-38 (1st Cir.2009) (finding no exclusion of the public from court proceedings where district court closed courtroom to avoid distraction to jury during lengthy and complex charge, but permitted—and required—already-present spectators to stay); *Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir.1995) (finding no public-trial violation where ingress and egress to the courtroom was limited during witness testimony to prevent disturbance of the proceedings); *United States v. Dugalic*, 489 Fed.Appx. 10, 19 (6th Cir.2012) (finding no

10.

denial of public access to proceedings where district court locked courtroom doors during closing argument to prevent jury from being distracted by spectators going in and out); and *State v. Brown*, 815 N.W.2d 609, 616-618 (Minn.2012) (finding no violation of right to public trial where trial court locked courtroom doors during jury instructions, but allowed already-present spectators to stay).

{¶ 24} Judge Bates' affidavit indicates that in order to avoid distracting the jury, he precludes spectators from leaving or entering the courtroom during jury instructions. Livingston's complaint alleges that Judge Zmuda also sought to limit movement in the courtroom to minimize distractions to the jury. We conclude that these reasonable limitations on ingress and egress to the courtroom do not violate the right of the public to attend criminal proceedings. Having said this, we recognize—as the Ohio Supreme Court did in *Wilks*, Slip Opinion No. 2018-Ohio-1562, ¶ 74—that while a trial court has discretion to control the proceedings in such a manner, "it must exercise that discretion carefully and sparingly."

{¶ 25} We next turn to Livingston's assertion that he was denied access to Judge Bates' courtroom during jury deliberations. Jury deliberations—by design—are to be conducted in private. *Koch v. Rist*, 89 Ohio St.3d 250, 252, 730 N.E.2d 963 (2000). Moreover, the right to a public trial is not violated where spectators are asked to wait outside the courtroom when court is not in session. *See State v. Sibou*, App. No. A14-0870, 2015 Minn. App. Unpub. LEXIS 413, *3-7 (May 4, 2015) (finding no violation of public-trial right where spectators were prevented from entering the

11.

courtroom at 9:00 and court did not convene until 10:00); *Elso v. United States*, S.D.Fla. No. 07-21313-Civ-SEITZ, 2010 U.S. Dist. LEXIS 144563, *124 (Dec. 17, 2010) (finding no violation of right to public trial where courtroom was locked when court was not in session). Thus, we conclude that Livingston was not barred from attending any criminal proceeding when he was prevented from entering the courtroom while the jury deliberated. He has cited no case law suggesting that he had a right to be in the courtroom while the jury was deliberating and when court was not in session.

{¶ 26} To be entitled to a writ of prohibition, a relator must establish that "(1) the [respondent] is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists." *State ex rel. Henry v. McMonagle*, 87 Ohio St.3d 543, 544, 721 N.E.2d 1051 (2000). We find that Livingston has failed to demonstrate that respondents have exercised or intend to exercise power unauthorized by law, and is therefore not entitled to a writ of prohibition.

{¶ 27} Moreover, we find that a writ of mandamus may not be employed "to require a judicial officer to prospectively observe the law, or to remedy the anticipated nonperformance of that duty," thus Livingston is also not entitled to a writ of mandamus. *State ex rel. Scripps Media, Inc.*, 1st Dist. Hamilton No. C-130241, 2013-Ohio-5895, at ¶ 71. Finally, we conclude that Livingston is not entitled to attorney fees and costs. Accordingly, we find respondents' motion for summary judgment well-taken. We dismiss Livingston's complaint in its entirety as against all respondents.

12.

## IV. Conclusion

{¶ 28} Placing limitations on spectators' ingress and egress to the courtroom in an effort to minimize distractions during jury instructions, closing arguments, and witness testimony, does not violate the public's right to attend criminal proceedings. The public's right to attend criminal proceedings is also not violated when a trial judge restricts access to the courtroom when court is not in session. Accordingly, we find respondents' motion for summary judgment well-taken, and we dismiss Livingston's complaint in its entirety. Costs assessed to relator.

Writ denied.

Mark L. Pietrykowski, J.

James D. Jensen, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE